PODMAJERSKY v DEPARTMENT OF TREASURY

Docket No. 310996. Submitted August 6, 2013, at Lansing. Decided
August 13, 2013, at 9:00 a.m.

John Podmajersky and Laughing Dolphin LLC filed a petition in the
Tax Tribunal, challenging the Department of Treasury's final assess-
ment of use tax under the Use Tax Act (UTA), MCL 205.91 *et seq*., for
petitioners' use and storage of a boat in Michigan in 2006. Podma-
jersky, a majority interest holder in Laughing Dolphin and an Illinois
resident, purchased the boat in Rhode Island on July 7, 2006, with an
intended destination of Chicago, Illinois. The boat broke down on
August 16, 2006 because of water infiltration into the fuel tanks, and
the boat was towed to Harbor Springs, Michigan for repairs, where it
remained until September 3, 2006. The boat was moved to Macatawa,
Michigan on September 4, 2006 after a failed open-water engine test,
moved to Chicago on October 1, 2006, and returned to Macatawa 17
days later, where it was stored for the winter. An attorney for
Laughing Dolphin LLC informed the Illinois Department of Revenue
in April 2009 that the boat was not subject to Illinois' use tax because
it had not been in Illinois for more than 30 days in 2006, 2007, or
2008, and spent most of its time in Michigan. The Illinois Department
of Revenue forwarded this information to the Treasury, and petition-
ers were issued a bill of taxes due in October 2009 for the use and
storage of the boat in 2006. The tribunal granted summary disposi-
tion in favor of respondent, rejecting petitioners' exceptions to the
hearing officer's proposed judgment in favor of respondent. Petition-
ers appealed.

The Court of Appeals *held*:

1. Under MCL 205.93(1) of the UTA, tangible personal prop-
erty that is purchased is presumed to have been acquired for
storage, use, or other consumption in Michigan and is subject to
the use tax if it is brought into Michigan within 90 days of the
purchase date. For purposes of MCL 205.92(c), "storage" is defined
as a keeping or retention of property in Michigan for any purpose
after the property loses its interstate character; the storage may be
for all purposes, without limitation, and includes storage necessi-
tated by the property's mechanical breakdown. Whether an owner

had the subjective intent to use, store, or otherwise consume the tangible property in Michigan at the time of its purchase is irrelevant for the purpose of determining if a presumption of taxation arose under MCL 205.93(1)(a) when the boat was brought to Michigan within 90 days of purchase. In this case, petitioners failed to rebut the presumption of taxation that arose under MCL 205.93(1)(a). There was competent, material, and substantial evidence on the record to support the tribunal's conclusion that petitioners brought the boat into Michigan within 90 days of its purchase and used and stored the boat in Michigan in 2006; the UTA does not provide a use tax exemption for storage that is necessitated by mechanical breakdown. Although it occurred more than 90 days after its purchase, the use and storage of the boat in Michigan after its return from Chicago in October 2006, was relevant on the ultimate issue of whether the petitioner used, stored, or consumed tangible property in Michigan. The 90-day period was relevant only to the issue of whether the presumption of taxation arose under MCL 205.93(1)(a).

2. The tribunal did not err by relying on petitioners' letter to the Illinois Department of Revenue. The document could have been authenticated by an Illinois Department of Revenue representative, MRE 901(b)(1), and it was an admission of a party-opponent and therefore not hearsay, MRE 801(d)(2).

3. MCL 205.94(1)(d) provides in part that property that is brought into Michigan by a nonresident person for storage, use, or consumption while temporarily within the state is exempt from the UTA. Evidence of whether the use or storage of property in Michigan by a nonresident is temporary is not limited by the 90-day period that applies to the presumption of taxation or exemption that arises under MCL 205.93(1)(a) or (b)(1)(i). In this case, the tribunal did not clearly err by concluding that the boat was not exempt from taxation under MCL 205.94(1)(d). The tribunal's conclusion that the boat was not used and stored temporarily in Michigan was supported by competent, material, and substantial evidence on the record. Evidence of where the boat was used and stored within and after 90 days of petitioners' purchase was relevant in analyzing whether petitioners' use of the boat in Michigan was temporary for purposes of the MCL 205.94(1)(d) exemption.

4. MCL 205.93(1)(b)(i) provides that tangible personal property used solely for personal, nonbusiness purposes that is purchased outside Michigan is exempt from the UTA if (1) the property is purchased by a person who is a nonresident at the time of purchase, and (2) the property is brought into the state more

than 90 days after the date of purchase; section (1)(b)(*i*) provides a presumption of exemption, it is not an automatic exemption. In this case, because the boat was used and stored in Michigan within 90 days of purchase, the MCL 205.93(1)(b)(*i*) exemption did not apply; it was irrelevant that petitioners took the boat to Illinois during the 90-day period and did not return until after that period had expired.

Affirmed.

TAXATION — USE TAX — PRESUMPTION — INTENT OF OWNER AT TIME OF PURCHASE.

The Use Tax Act, MCL 205.91 *et seq.*, imposes a tax on the privilege of using, storing, or consuming personal property in Michigan; under MCL 205.93(1), tangible personal property that is purchased is presumed to have been acquired for storage, use, or other consumption in Michigan and is subject to the use tax if it is brought into Michigan within 90 days of the purchase date; for purposes of MCL 205.92(c), "storage" is defined as a keeping or retention of property in Michigan for any purpose after the property loses its interstate character and the storage may be for all purposes, without limitation; whether an owner had the subjective intent to use, store, or otherwise consume the tangible property in Michigan at the time of its purchase is irrelevant for the purpose of determining if a presumption of taxation arose under MCL 205.93(1)(a).

*Miller, Canfield, Paddock & Stone, PLC* (by *Gregory A. Nowak* and *Jackie J. Cook*), for John Podmajersky and Laughing Dolphin LLC.

*Bill Schuette*, Attorney General, *John J. Bursch*, Solicitor General, *Richard A. Bandstra*, Chief Legal Counsel, and *Matthew B. Hodges*, Assistant Attorney General, for the Department of Treasury.

Before: SAAD, P.J., and K. F. KELLY and GLEICHER, JJ.

PER CURIAM. Petitioners, John Podmajersky and Laughing Dolphin LLC, appeal as of right a judgment of the Michigan Tax Tribunal (MTT), which affirmed an assessment of use tax by respondent, Department of Treasury (Treasury), under Michigan's Use Tax Act

(UTA), MCL 205.91 *et seq*. The MTT concluded that petitioners were subject to use tax for using and storing a boat in Michigan between 2006 and 2008. Finding no error warranting reversal, we affirm.

### I. BASIC FACTS

Laughing Dolphin LLC is a Rhode Island limited liability company. Podmajersky is a member of the Laughing Dolphin LLC and has held a majority interest in the company since its formation in 2002. He is an Illinois resident, has never been a Michigan resident, and currently resides in Chicago.

On July 7, 2006, Podmajersky purchased a 65-foot yacht (the boat) in Rhode Island. According to Podmajersky, at the time of purchase he intended to take the boat to Chicago. Petitioners hired a professional captain to transport the boat from Rhode Island to Chicago, traveling through New York and then through the Great Lakes. The boat departed Rhode Island on July 31, 2006. Between August 11 and August 13, the boat stopped in Cleveland, Ohio to pick up Podmajersky and three guests for the remainder of the trip.

According to Podmajersky, on August 16, 2006, a guest traveling on board the boat mistakenly pumped hundreds of gallons of water into the fuel tanks, causing a catastrophic breakdown in Lake Michigan and necessitating a tow. A tug boat arrived several hours later and towed the boat to the Irish Boat Shop in Harbor Springs, Michigan.

The boat remained in Harbor Springs from August 16, 2006 to September 3, 2006, while it underwent repairs to remove water from the fuel tanks and fuel systems. The Irish Boat Shop performed a number of mechanical repairs to address the water infiltration concerns and also

performed some nonessential repairs to the television and stereo, as well as some cosmetic work to improve the appearance of the boat.

It appears that Podmajersky went back to Chicago while the boat repairs were being performed in Harbor Springs. In an e-mail to the boat captain dated August 25, 2006, Podmajersky stated: "We are on the way out the[] door to go to Harbor Springs. I will be back on Monday afternoon. Hopefully we can speak on Tuesday and settle up our account. Still trying to get a slip in Chicago. I don't know if we will be settl[]ing in Holland or closer to home."

On September 3, 2006, after the repairs were complete, Podmajersky took the boat back out onto Lake Michigan. According to Podmajersky, "[a]fter being underway for some time, the vessel service indicators again began to alert us to water in the fuel lines. The vessel engines were not operating properly, and it was clear that the water had not been fully removed from the fuel system." Podmajersky further averred: "The fuel filters on the vessel continued to fill with water and numerous systems indicators represented that water remained a safety hazard for the boat." "I had to stop the boat every 15 minutes to clear water and algae from the fuel filters."

On September 4, 2006, Podmajersky docked the boat in Macatawa, Michigan, approximately 85 nautical miles from Chicago. According to Podmajersky, the boat was diverted to Macatawa to "avoid the potential of another catastrophic breakdown that could again strand Laughing Dolphin on the open waters of Lake Michigan." In his original affidavit, Podmajersky indicated that "extensive repairs to fix the continuing water damage to the fuel system were undertaken at Eldean's ship yard in Macatawa, Michigan from September 4, 2006 through October 1, 2006." However, an invoice from Eldean's Shipyard indicates that the only work Eldean's Shipyard performed on the boat was related to

a sewage smell. Eldean's Shipyard replaced a 24-volt bilge pump; the total cost, including parts and labor, was $133.18. In an attempt to explain this apparent discrepancy, petitioner Podmajersky submitted a second affidavit, in which he averred:

> While the boat was in Macatawa, from September 4, 2006 through October 1, 2006, I traveled to Macatawa on the weekends in order to personally replace numerous fuel/water separator filters and to conduct test runs of the vessel on the inland waters of Lake Macatawa in order to drain the remaining water from the fuel system and to test the seaworthiness of the vessel before determining that it was safe to depart for Illinois. This practice was partially successful as we started to observe a reduction in the amount of contamination to the extent that I felt it would be possible to make an offshore passage on a day offering completely calm seas and maximum visibility.

On October 1, 2006, Podmajersky left Macatawa and proceeded to Chicago. However, "halfway through the journey, onboard service indicators again began to detect water in the fuel filters. [Podmajersky] made the decision to proceed to Chicago." Upon arrival, Podmajersky was accommodated with transient docking in the Chicago Harbor System. The boat remained in Chicago for 17 days before it returned to Macatawa, where it was stored at Eldean's Shipyard for the winter. Podmajersky explained that indoor storage was required by his insurance company.

An invoice from Eldean's Shipyard indicates that it performed work to the boat's fuel system on May 15, 2007. The work was completed in one day.

## II. PROCEDURAL HISTORY

Sometime in 2009, the Illinois Department of Revenue inquired whether the boat was subject to Illinois

use tax. In a letter dated April 15, 2009, an attorney who indicated that he was "Power of Attorney for Laughing Dolphin LLC," represented that the boat was not subject to Illinois use tax because it was used almost exclusively in Michigan. The letter provides in relevant part: "It is the taxpayer's position that the Laughing Dolphin was never used more than 30 accumulated days in any calendar year in Illinois since its purchase in July 2006 and, thus, has never been subject to Illinois use tax." The letter continues, "at no time was the boat in Illinois for more than 30 days in 2006, 2007 or 2008. As you can see, the Laughing Dolphin spends most of its time in Michigan. Therefore, the taxpayer was not subject to the Illinois Use Tax in 2006 through 2008."

The Illinois Department of Revenue forwarded this information to the Michigan Department of Treasury, which then began an inquiry to determine whether the boat was subject to Michigan's use tax. On October 12, 2009, Treasury issued a bill of taxes due for the 2006 tax year in the amount of $98,557.97, representing $66,000 in tax due, $16,500 in penalties, and $16,057.97 in interest.

Petitioners protested the assessment, and in a letter dated December 9, 2009, Podmajersky, through his attorney, opined that the boat was not subject to the UTA because its presence in Michigan within 90 days of purchase was temporary and necessitated by catastrophic breakdowns.

An informal conference was held on April 27, 2010. Following the conference, the hearing referee recommended that the assessment be cancelled, finding that the boat was exempt from use tax under the "temporary use" exemption, MCL 205.94(1)(d).

On September 15, 2010, Treasury issued a decision and order of determination rejecting the hearing refer-

ee's recommendation and, on September 22, 2010, Treasury issued a final bill of taxes against petitioner in the amount of $101,105.29.

On October 27, 2010, petitioners filed for review with the tax tribunal. After conducting discovery, petitioner filed a motion for summary disposition under MCR 2.116(C)(10). Petitioners argued that the boat was not subject to the UTA because, according to petitioners, it was not "brought" into Michigan within 90 days of purchase because the boat's presence in Michigan was the result of a catastrophic breakdown. Further, petitioners argued, even if the boat was brought into Michigan within 90 days of purchase, the boat was not subject to the UTA because petitioners did not acquire it for storage, use, or consumption in Michigan. Petitioners argued that the evidence clearly demonstrated that it was intended the boat would be used in Illinois and was diverted to Michigan only due to catastrophic breakdowns.

Podmajersky acknowledged that he had brought the boat back to Michigan for winter storage in October 2006; however, petitioners emphasized that this occurred after the 90 day period expired. Therefore, petitioners argued that the boat was exempt from use tax under MCL 205.93(1)(b)($i$), which provides a presumption of exemption if "[t]he property is purchased by a person who is not a resident of this state at the time of purchase and is brought into this state more than 90 days after the date of purchase." Finally, petitioners argued that the boat was exempt under MCL 205.94(d) because it was brought into the state by a nonresident while temporarily in the state.

On April 12, 2012, the hearing officer issued a proposed judgment denying petitioners' motion for summary disposition and granting summary disposi-

tion in favor of Treasury under MCR 2.116(I). The hearing officer concluded that the presumption of taxation arose when the boat entered Michigan in August 2006 and stayed for the balance of the year, with the exception of 17 days in Chicago. The hearing officer rejected petitioners' breakdown/necessity defense: "Although it may have been a practical necessity to repair the boat in Michigan, that does not change the fact that keeping the boat here for those purposes constitutes storage and use." The hearing officer drew an analogy from tort law: "It has been held that a person is liable for damages caused by a trespass notwithstanding that he or she was forced by a storm to remain moored to a dock on the property of another in order to prevent injury or loss of life. *Vincent v Lake Erie Transp Co*, 109 Minn 456; 124 NW 221 (1910)." The hearing officer determined that, "[a]ssuming arguendo that there is any validity to Petitioner's 'break-down' defense, that defense vanished when the craft returned to Michigan after a brief trip to Chicago."

The hearing officer further rejected petitioners' claims that the boat was exempt under MCL 205.93(1)(b)(*i*) and MCL 205.94(d). The hearing officer reasoned that the MCL 205.93(1)(b)(*i*) exemption did not apply because it only applies to property brought into the state after 90 days, and petitioner had brought the boat into the state *within* 90 days of its purchase. The hearing officer also determined that MCL 205.94(d) was not applicable because petitioners' use and storage of the boat in Michigan was not temporary.

On May 3, 2012, petitioners filed exceptions to the proposed order, arguing that: (1) the hearing officer erred by determining that petitioners' intent was not a consideration in determining whether a presumption of taxation arose from the boat being brought into Michi-

gan within 90 days of purchase; (2) the proposed order improperly relied on assumptions as to petitioners' intent; (3) the hearing officer improperly considered petitioners' use of the boat in Michigan after 90 days from the date of purchase; and (4) the hearing officer improperly relied on a Minnesota decision from 1910.

On June 6, 2012, the tribunal issued a final opinion and judgment rejecting petitioners' exceptions and adopting the proposed judgment granting summary disposition in favor of Treasury.

Petitioners now appeal as of right.

### III. STANDARD OF REVIEW

Appellate review of the tribunal decision is limited. Unless fraud is alleged, an appellate court reviews the decision for a "misapplication of the law or adoption of a wrong principle." *Liberty Hill Housing Corp v City of Livonia*, 480 Mich 44, 49; 746 NW2d 282 (2008) (quotation marks and citation omitted). The tribunal's factual findings are deemed conclusive provided they are supported by competent, material, and substantial evidence on the whole record. *Id*. When statutory interpretation is at issue, appellate review of the tribunal's decision is de novo. *Id*. In an appeal from an order of the Tax Tribunal, the appellant bears the burden of proof. *ANR Pipeline Co v Dep't of Treasury*, 266 Mich App 190, 198; 699 NW2d 707 (2005).

### IV. ANALYSIS

The UTA imposes a tax on "the privilege of the using, storing, or consuming tangible personal property" in Michigan. MCL 205.93(1); *Terco, Inc v Dep't of Treasury*, 127 Mich App 220, 226; 339 NW2d 17 (1983). "The use tax complements the sales tax and was designed to

govern those transactions not covered by the General Sales Tax Act." *Guardian Indus Corp v Dep't of Treasury*, 243 Mich App 244, 249; 621 NW2d 450 (2000). MCL 205.93(1)(a) provides in pertinent part:

> (1) There is levied upon and there shall be collected from every person in this state a specific tax for the privilege of using, storing, or consuming tangible personal property in this state at a rate equal to 6% of the price of the property . . . . For the purpose of the proper administration of this act and to prevent the evasion of the tax, all of the following shall be presumed:

> (a) That tangible personal property purchased is subject to the tax if brought into this state within 90 days of the purchase date and is considered as acquired for storage, use, or other consumption in this state.

MCL 205.92(b) and (c) define "use" and "storage" as follows:

> (b) "Use" means the exercise of a right or power over tangible personal property incident to the ownership of that property including transfer of the property in a transaction where possession is given. Converting tangible personal property acquired for a use exempt from the tax levied under this act to a use not exempt from the tax levied under this act is a taxable use.

> (c) "Storage" means a keeping or retention of property in this state for any purpose after the property loses its interstate character.

### A. PETITIONERS FAILED TO REBUT THE PRESUMPTION OF TAXATION THAT AROSE AS SOON AS THE BOAT ENTERED MICHIGAN

The boat was brought into Michigan within 90 days of purchase. Petitioners argue that MCL 205.93(1)(a) contains an element of intent; that is, before assessing the use tax, Treasury must first establish that petitioners acquired the property with the intent to use or store

it in Michigan. Petitioners would thus impose two requirements for the presumption under MCL 205.93(1)(a) to arise: (1) the taxpayer must bring the property into Michigan within 90 days of purchase; and (2) the taxpayer must have acquired the property for use, storage, or other consumption in Michigan.

Contrary to petitioners' argument, nothing in MCL 205.93(1)(a) requires that Treasury establish the taxpayer's subjective intent when bringing the property into the state. Rather, under MCL 205.93(1)(a) it is presumed that property is acquired for use, storage, or other consumption in Michigan and is therefore subject to taxation if the taxpayer brings the property into the state within 90 days of purchase. See *Guardian Indus Corp*, 243 Mich App at 250-251 ("[T]he language [of MCL 205.93(1)(a)] merely provided that tangible personal property brought into the state within ninety days of purchase was presumed to be acquired for storage, use, or other consumption in this state."). See also *Kellogg Co v Dep't of Treasury*, 204 Mich App 489, 493; 516 NW2d 108 (1994) ("There is no dispute that the aircraft in this case were brought into Michigan within ninety days of purchase. Hence, it is presumed that they were subject to use tax.").

Because petitioners brought the boat into Michigan within 90 days of purchase, it is presumed that the boat is subject to use tax. Thus, it is petitioners who had the "burden of overcoming the presumption of taxation, or establishing that an exemption applies." *Id*. at 493. Petitioners argue that the presumption was overcome because the evidence showed that the use and storage of the boat in Michigan was necessitated by catastrophic engine failure. Petitioners' argument is unpersuasive.

Petitioners argue in essence that they are exempt from the UTA. "Tax exemptions are disfavored, and the

burden of proving an entitlement to an exemption is on the party claiming the right to the exemption. Tax exemptions are strictly construed against the taxpayer because they represent the antithesis of tax equality." *Guardian Indus Corp*, 243 Mich App at 249 (quotation marks and citation omitted).

Nothing within the UTA provides an exemption for storage, use, or consumption when said storage, use, or consumption is necessitated by mechanical breakdown. Indeed, the act defines "storage" to mean "a keeping or retention of property in this state *for any purpose* after the property loses its interstate character." MCL 205.92(c) (emphasis added). The plain and ordinary meaning of the phrase "for any purpose" evidences a legislative intent that the storage be for all purposes without limitation. See *Dep't of Agriculture v Appletree Mktg, LLC*, 485 Mich 1, 8; 779 NW2d 237 (2010).

The record contains competent, material, and substantial evidence that the boat was both used and stored in Michigan in 2006. The boat entered Michigan waters as early as August 16, 2006, and it remained in Michigan until October 1, 2006. During this time, petitioners used the boat on Lake Michigan and Lake Macatawa. In his second affidavit, Podmajersky averred that between September 4, 2006 and October 1, 2006, petitioner "traveled to Macatawa on the weekends . . . to conduct test runs of the vessel on the inland waters of Lake Macatawa . . . ." Further, the boat was stored at the Irish Boat Shop in Harbor Springs and Eldean's Shipyard in Macatawa. Petitioner's reason for storage—the alleged mechanical breakdowns—is irrelevant.

Although the boat left Michigan on October 1, 2006, it returned to Macatawa, Michigan on October 17, 2006, for heated indoor storage. Since the boat's return to Michigan, petitioner used and stored it almost exclu-

sively in Michigan. In the April 15, 2009 letter to the Illinois Department of Revenue, petitioners stated that "at no time was the boat in Illinois for more than 30 days in 2006, 2007 or 2008." The letter provided a detailed account of the boat's activity after October 17, 2006. "As you can see," the letter concludes, "the [boat] *spends most of its time in Michigan.*"

Petitioners argue that use and storage of the boat in Michigan after October 17, 2006, is irrelevant because it did not occur within 90 days of purchase. The 90-day period, however, is only relevant to the issue of whether the presumption of taxation arises under MCL 205.93(1). If the property is brought into the state within 90 days of its purchase, the presumption of taxation applies. MCL 205.93(1)(a). If the property is brought into the state after 90 days, the presumption of taxation does not apply; rather, the property is presumed exempt. MCL 205.93(1)(b)(*i*). Evidence of what occurred during and after the 90-day period is still relevant to the ultimate issue of whether the taxpayer used, stored, or consumed tangible personal property in Michigan.

We reject petitioners' argument that the tribunal erred by relying on petitioners' letter to the Illinois Department of Revenue. Treasury received the document pursuant to a file sharing agreement between Michigan and Illinois and there is no reason why the letter could not be authenticated at a hearing. The representative from Treasury who received the letter from the Illinois Department of Revenue could testify that the document is what it is claimed to be. MRE 901(b)(1). Alternatively, a representative from the Illinois Department of Revenue could provide an appropriate foundation that the letter is what it is claimed to be. *Id*. Further, the document is not inadmissible hearsay.

MRE 801(d)(2) excludes admissions by party-opponents from the definition of hearsay. The letter was offered against petitioners. *Id*. Further, it was written by petitioners' attorney pursuant to a power of attorney, i.e. "a person authorized by the party to make a statement concerning the subject." MRE 801(d)(2)(C).

Accordingly, the presumption of taxation arose as soon as the boat entered Michigan, which petitioners failed to rebut. The record contains competent, material, and substantial evidence that the boat was both used and stored in Michigan in 2006 and thereafter. Therefore, the boat is subject to use tax unless otherwise exempt.

### B. PETITIONERS ARE NOT EXEMPT FROM USE TAX UNDER MCL 205.94(1)(d)

MCL 205.94(1)(d) provides as follows:

> (1) The following are exempt from the tax levied under this act, subject to subsection (2):
>
> *   *   *
>
> (d) Property that is brought into this state by a nonresident person for storage, use, or consumption while temporarily within this state, except if the property is used in this state in a nontransitory business activity for a period exceeding 15 days.

We reject petitioners' argument that the use and storage of the boat in Michigan was "temporary" while it made its journey to Chicago. Petitioners focus only on the boat's use and storage in Michigan within 90 days of purchase. As noted above, the 90-day period is only relevant to the issue of whether the presumption of taxation or exemption arises under MCL 205.93(1)(a) and (b)(1)(*i*). The "temporary use" exemption contains

no limitation period. Thus, the 90-day period is largely irrelevant. Evidence of what occurred within and after 90 days of purchase is relevant to the ultimate issue of whether the taxpayer used, stored, or consumed tangible personal property in Michigan.

The record contains competent, material, and substantial evidence to support the tribunal's conclusion that the boat was not used and stored "temporarily" in Michigan. As previously discussed, the boat entered Michigan waters as early as August 16, 2006, and it remained in Michigan until October 1, 2006. Although the boat left Michigan on October 1, 2006, it returned 17 days later and it has remained almost exclusively in Michigan since its return. On the basis of the evidence in the record, the tribunal did not clearly err when it concluded that the boat was not exempt from taxation under MCL 205.94(1)(d).

### C. PETITIONERS ARE NOT ENTITLED TO THE PRESUMPTION OF EXEMPTION UNDER MCL 205.93(1)(b)(*i*)

MCL 205.93(1)(b)(*i*) provides:

(1) There is levied upon and there shall be collected from every person in this state a specific tax for the privilege of using, storing, or consuming tangible personal property in this state at a rate equal to 6% of the price of the property . . . . For the purpose of the proper administration of this act and to prevent the evasion of the tax, all of the following shall be presumed:

\* \* \*

(b) That tangible personal property used solely for personal, nonbusiness purposes that is purchased outside of this state and that is not an aircraft is exempt from the tax levied under this act if 1 or more of the following conditions are satisfied:

(*i*) The property is purchased by a person who is not a resident of this state at the time of purchase and is brought into this state more than 90 days after the date of purchase.

Contrary to petitioners' argument, MCL 205.93(1)(b)(*i*) does not provide an automatic exemption from taxation. Rather, it merely provides a presumption of exemption. And the presumption arises only if "the property is used solely for personal, non-business purposes" and "is purchased by a person who is not a resident of this state at the time of purchase and is brought into this state more than 90 days after the date of purchase." In the present case, the boat was used and stored in Michigan within 90 days of the date of purchase. Therefore, the presumption does not apply. It is irrelevant that petitioner later took the boat to Illinois and did not bring it back to Michigan until after the 90 day period expired.

Affirmed.

SAAD, P.J., and K. F. KELLY and GLEICHER, JJ., concurred.