P J HOSPITALITY, INC v DEPARTMENT OF TREASURY

Docket No. 314302. Submitted June 11, 2014, at Detroit. Decided June 26, 2014. Approved for publication August 21, 2014, at 9:00 a.m.

The Department of Treasury assessed P. J. Hospitality, Inc., for the Michigan tax liability of Soulful Concepts, Inc., on the basis that P. J. Hospitality was a successor of Soulful Concepts under MCL 205.27a(1). A hearing referee upheld the assessment. The Tax Tribunal adopted the findings of fact and conclusions of law of the referee and entered an opinion and judgment in favor of the Department of Treasury. P. J. Hospitality appealed.

The Court of Appeals *held*:

1. According to the plain language of MCL 205.27a(1), P. J. Hospitality is personally liable for the payment of the taxes, interest, and penalties accrued and unpaid by Soulful Concepts because P. J. Hospitality failed to comply with the escrow requirements of § 27a(1) when it purchased Soulful Concepts' business, including all of its assets.

2. Because P. J. Hospitality failed to provide any evidence of what the market value of the business assets of Soulful Concepts was, it cannot claim the benefits of the provision in §27a(1) to the effect that the purchaser's personal liability is limited to the fair market value of the business less the amount of any proceeds that are applied to balances due on secured interests that are superior to the lien provided for in MCL 205.29(1).

3. MCL 205.27a(1) only allows for an offset for "any proceeds that are applied to balances due on secured interests that are superior to the lien provided for in section 29(1)." In order for such an offset to occur, proceeds from the sale must be applied to balances due. The mere existence of any balances is insufficient for an offset. There is no evidence that any part of the proceeds of the sale of Soulful Concepts was applied to balances due on secured interests that are superior to the lien provided for in § 29(1).

Affirmed.

*Abraham & Rose, PLC* (by *Jerry R. Abraham*), for P. J. Hospitality, Inc.

*Bill Schuette*, Attorney General, *Aaron D. Lindstrom*, Solicitor General, *Richard A. Bandstra*, Chief Legal Counsel, and *Matthew B. Hodges*, Assistant Attorney General, for the Department of Treasury.

Before: DONOFRIO, P.J., and GLEICHER and M. J. KELLY, JJ.

PER CURIAM. Petitioner appeals as of right the Tax Tribunal's opinion and judgment, which adopted the findings of fact and conclusions of law of a hearing referee, who had upheld respondent's assessment of successor liability to petitioner. Because the tribunal did not commit an error of law or adopt a wrong legal principle and its factual findings were supported by competent, material, and substantial evidence, we affirm.

### I. BASIC FACTS

Before 2007, the entity Soulful Concepts, Inc., owned the restaurant in Southfield, Michigan, called Beans & Cornbread. Patrick Coleman, in turn owned Soulful Concepts. In 2007, petitioner, also owned by Coleman, purchased all of Soulful Concepts' business, including all of its assets, for $50,000[1] and continued to operate the Beans & Cornbread restaurant. Coleman testified that he thought the value of all the assets was between $30,000 and $40,000. Coleman stated that this transaction was done because Soulful Concepts had "some debt issues" and "needed to get a fresh start." Part of those debt issues involved large tax liabilities owed to both the federal government and the state of Michigan.

---

[1] No actual money exchanged hands though. Instead, petitioner gave Soulful Concepts a promissory note for the $50,000, and Coleman signed the purchase agreement on behalf of both parties.

Specifically, at the time of the referee's hearing, the amount owed to the federal government was approximately $150,000, and the amount owed to the state of Michigan, not including some interest, was approximately $57,000.

Respondent assessed petitioner with Soulful Concepts' Michigan tax liability on the basis that it was a successor entity under MCL 205.27a(1). Petitioner objected to the assessment and filed a petition for a hearing. Petitioner argued at the hearing that under the statute, its liability was limited by the fair market value of the assets acquired minus any senior, outstanding liabilities, such as the amount owed to the federal government. As a result, petitioner claimed that, with the value of the assets not exceeding $40,000, the outstanding $150,000 owed to the federal government "eviscerate[d] any sort of liability" to respondent.

After holding a hearing, the referee disagreed and concluded that respondent's assessment was proper. First, the referee did not accept Coleman's lay opinion on the evaluation of the assets, stating that it "cannot be accepted as credible or accurate." The referee explained:

> [Coleman] did not make any effort to describe the property with the specificity that would be needed to determine its fair market value. There is no evidence regarding the value of the liquor license or goodwill. [Coleman] executed the documents of sale on behalf of both the seller and the purchaser, which indicates that this was not an arm's-length transaction and the stated purchase price cannot be accepted as fair market value. There is no market evidence whatsoever to support an appraisal of the value of the assets or the business.

The referee also concluded that if any federal tax liens existed, there was no evidence that they were ever

perfected by being recorded in the Oakland County Register of Deeds. Furthermore, the referee concluded that the statute only allows for liability to be limited by the fair market value of the business acquired minus any proceeds of the sale that were used to satisfy a senior, secured interest. But the referee also found that none of the proceeds were used for such a purpose; thus, petitioner was not entitled to any reduction in liability.

The Tax Tribunal affirmed the referee's decision and adopted his proposed opinion, including the findings of fact and conclusions of law.

## II. ANALYSIS

Review of decisions by the Tax Tribunal is limited. "Unless fraud is alleged, an appellate court reviews the decision for a misapplication of the law or adoption of a wrong principle." *Podmajersky v Dep't of Treasury*, 302 Mich App 153, 162; 838 NW2d 195 (2013), quoting *Liberty Hill Housing Corp v Livonia*, 480 Mich 44, 49; 746 NW2d 282 (2008) (quotation marks omitted). "The tribunal's factual findings are deemed conclusive provided they are supported by competent, material, and substantial evidence on the whole record." *Podmajersky*, 302 Mich App at 162.

But to the extent that our review involves issues of statutory interpretation, that aspect of our review is de novo. *Id*. The primary goal of statutory interpretation is to give effect to the intent of the Legislature. *Ford Motor Co v Woodhaven*, 475 Mich 425, 438; 716 NW2d 247 (2006). To ascertain the Legislature's intent, we look to the language in the statute and give the words their plain and ordinary meanings. *Lafarge Midwest, Inc v Detroit*, 290 Mich App 240, 246; 801 NW2d 629 (2010). If the statute's language is not ambiguous, this

Court will enforce the statute as written. *Ford Motor*, 475 Mich at 438-439.

MCL 205.27a(1), which governs successor liability, provided the following at all relevant times:[2]

> If a person liable for a tax administered under this act sells out his or her business or its stock of goods or quits the business, the person shall make a final return within 15 days after the date of selling or quitting the business. The purchaser or succeeding purchasers, if any, who purchase a going or closed business or its stock of goods shall escrow sufficient money to cover the amount of taxes, interest, and penalties as may be due and unpaid until the former owner produces a receipt from the state treasurer or the state treasurer's designated representative showing that the taxes due are paid, or a certificate stating that taxes are not due. Upon the owner's written waiver of confidentiality, the department may release to a purchaser a business's known tax liability for the purposes of establishing an escrow account for the payment of taxes. If the purchaser or succeeding purchasers of a business or its stock of goods fail to comply with the escrow requirements of this subsection, the purchaser is personally liable for the payment of the taxes, interest, and penalties accrued and unpaid by the business of the former owner. The purchaser's or succeeding purchaser's personal liability is limited to the fair market value of the business less the amount of any proceeds that are applied to balances due on secured interests that are superior to the lien provided for in [MCL 205.29(1)].

Petitioner first argues that the tribunal erred by relying on the fact that there was no evidence that any of the federal tax liens were ever recorded. However, this issue is not relevant because, as will be discussed later, the existence of any senior security interests only comes into play *when proceeds from the sale of the*

---

[2] MCL 205.27a(1) was modified by 2014 PA 3, effective February 6, 2014.

*business are used to satisfy part of that debt,* and there was no evidence that any proceeds were applied in this manner. Thus, we offer no opinion on whether the federal tax liens in this case qualify as "secured interests that are superior to the [state's tax] lien."

Here, Coleman admitted that he never escrowed any funds on behalf of petitioner. Thus, according to the plain language of the statute, it is clear that petitioner "is personally liable for the payment of the taxes, interest, and penalties accrued and unpaid by" Soulful Concepts. MCL 205.27a(1); see also *STC, Inc v Dep't of Treasury*, 257 Mich App 528, 537; 669 NW2d 594 (2003).

The next inquiry is to determine to what extent petitioner is liable. Petitioner claims that the indebtedness owed to the federal government needs to be taken into account for determining the amount it owes the state as a successor entity. The statute provides that the "purchaser's personal liability is limited to the fair market value of the business less the amount of any proceeds that are applied to balances due on secured interests that are superior to the lien provided for in [MCL 205.29(1)]." The tribunal determined that petitioner could not invoke the benefits of this section because it failed to establish the fair market value of the business. The finding that petitioner failed to establish the fair market value was supported by competent, material, and substantial evidence. Coleman agreed at the hearing that the sale of the business was not an arm's-length transaction. Accordingly, the $50,000 sale price had no bearing on any market value determination. See *Mackey v Dep't of Human Servs*, 289 Mich App 688, 704; 808 NW2d 484 (2010). Further, petitioner offered nothing to establish what the fair market value may be except for Coleman's unsupported lay opinion

regarding the value. The referee and the tribunal decided that Coleman's opinion on the value of the assets was not credible, and such credibility determinations will not be disturbed by this Court. *Detroit Lions, Inc v Dearborn*, 302 Mich App 676, 703; 840 NW2d 168 (2013). Further, Coleman admitted that he never got an appraisal of the assets and did not provide a list of the specific assets to respondent. Accordingly, because petitioner utterly failed to provide any evidence of what the market value of the business assets was it cannot claim this limitation. Cf. *Podmajersky*, 302 Mich App at 164-165 (stating that the burden of proving an exemption to a tax is on the party claiming the exemption).

The tribunal further found that there was no evidence that any proceeds from the sale were applied to balances due on any superior secured interests. Petitioner does not dispute this finding. Rather, petitioner argues that the presence of a superior secured interest, without any proceeds having been applied to the balance of the secured interest, is enough for it to offset its successor liability. However, the statute only allows for an offset for "any proceeds *that are applied* to balances due on secured interests that are superior to the lien provided for in section 29(1)." MCL 205.27a(1) (emphasis added). Thus, it is clear that in order for any such offset to occur, proceeds from the sale must be "applied" to balances due—the mere existence of any balances is insufficient. Accordingly, the tribunal did not misapply the law or adopt an incorrect legal principle when it came to the same conclusion.

In conclusion, we affirm the Tax Tribunal's opinion and judgment affirming the imposition of petitioner's successor liability pursuant to MCL 205.27a(1). The tribunal did not misapply the law or adopt an incorrect legal principle. It is undisputed that petitioner was

liable for Soulful Concepts' liability because it did not escrow any funds in conjunction with the business purchase. While normally, petitioner's liability would have been limited to the fair market value of the business acquired, petitioner offered no evidence of the fair market value. Finally, the existence of any superior federal tax liens is of no consequence because the statute only allows for any offset of successor liability when proceeds from the sale are applied to such superior liens, and there is no evidence that any part of the proceeds were applied in this manner.

Affirmed.

DONOFRIO, P.J., and GLEICHER and M. J. KELLY, JJ., concurred.