*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

IRIS LLC,

Petitioner-Appellant,

v

CITY OF ROYAL OAK,

Respondent-Appellee.

UNPUBLISHED
April 4, 2019

No. 342812
Tax Tribunal
LC No. 16-003127-TT

Before: TUKEL, P.J., and K. F. KELLY and M. J. KELLY, JJ.

PER CURIAM.

In this commercial property tax valuation dispute, petitioner appeals by right a corrected opinion and order, setting the tax value for 2016 and 2017. On appeal, petitioner focuses on an earlier October 17, 2017 order, which precluded petitioner from presenting evidence at the November 28, 2017 hearing as a result of petitioner's failure to file and exchange its valuation disclosure and prehearing statement by September 5, 2017. Finding no error warranting reversal, we affirm.

## I. BASIC FACTS

At issue in this case are the 2016 and 2017 tax valuations for the land and buildings of a car dealership – Matthews-Hargreaves Chevrolet. Petitioner is the owner/landlord and the dealership is the tenant. In the 2016 tax year, the Board of Review established the property's taxable value as $1,973,650. For 2017, the Board established the taxable value as $1,991,412. Petitioner filed a petition challenging the Board's valuations. According to petitioner, the actual taxable value for both years was $1,500,000.

On December 16, 2016, the tribunal issued a scheduling order, which required the parties to file valuation disclosures and prehearing statements by August 4, 2017. However, on the August deadline date for disclosures and prehearing statements, the parties filed a stipulated motion for a one-month extension of the deadline to September 5, 2017. Nothing in the stipulation motion identified the reason for the extension. The tribunal granted the motion and issued an accompanying order that stated, "[n]o further extensions shall be given without a showing of good cause by the parties."

Respondent timely filed and served its valuation disclosures and prehearing statement on the September 5 extended deadline but petitioner did not. In an October 17, 2017 Summary of Prehearing Conference and Scheduling Order, the tribunal concluded that there was no good cause for petitioner's untimely filings. As such, the tribunal forbade petitioner from offering witnesses or a valuation disclosure at the hearing. The tribunal denied petitioner's motion for reconsideration, finding petitioner's action willful. This Court denied petitioner's application for leave to appeal. *Iris, LLC v City of Royal Oak*, unpublished order of the Court of Appeals, issued November 27, 2017 (Docket No. 341185).

The matter then proceeded to a full hearing on November 28, 2017. The judge reminded petitioner that it was not allowed to call any witnesses and invited petitioner to make an opening statement. Rather than argue the merits of the case, petitioner again protested being hamstringed by the tribunal's prior orders. Respondent then called its only witness – John Widmer – who testified as an expert in the appraisal of automobile dealerships. He testified that there are three approaches to valuation – cost approach, sales comparison/market approach, and income approach. Widmer determined that the income approach was inapplicable because the lease was not an arm's length transaction. The cost approach supported Widmer's analysis, but Widmer determined that the best approach was the market approach. To that end, Widmer prepared a number of comparables to determine the dealership's value. Considering all three methods of valuation, Widmer concluded that the market value for the property was $4,900,000 as of December 31, 2015 and $5,000,000 as of December 31, 2016. Petitioner cross-examined Widmer, focusing specifically on issues related to zoning, retention ponds, and whether Widmer considered the cost of replacing the parking lot.

At the close of respondent's proofs, petitioner indicated that it would like to call a rebuttal witness, Daniel Tomlinson. However, no testimony was elicited from Tomlinson because, rather than question Tomlinson about Widmer's valuations, petitioner sought to elicit testimony of Tomlinson's own appraisal.

Rather than make a final argument, petitioner once again objected to the fact that he was prevented from presenting evidence and, consequently, the tribunal would be unable to conduct an independent evaluation:

> MR. HOFFERT: Your Honor, I think part of the requirements clearly in the statutes and interpretations by the Court of Appeals and the Supreme Court is you have to make an independent determination. You have stopped me from giving you the information that allows you to make an independent determination, such as the ordinance for water retention and estimates that were made by the property owners – the property lessees, the owners of Matthews-Hargreaves with regard to the fixing of the property. Not the value of the property but rather the problems with the property. You have not allowed me to do that. As such I object and I have nothing else to say.

The tribunal issued a Final Opinion and Judgment on February 23, 2018. Utilizing the sales comparison approach, the tribunal's final valuation provided:

| Parcel No. | Year | TCV | SEV | TV |
| --- | --- | --- | --- | --- |

| 72-25-14-101-040 | 2016 | $4,400,000 | $2,200,000 | $1,973,650 |
| 72-25-14-101-040 | 2017 | $4,700,000 | $2,350,000 | $1,981,412 |

On February 27, 2017, respondent sent the tribunal a letter, noting that "due to an inadvertent typographical error . . . the 2017 taxable value stated in my Prehearing Statement and in the Final Opinion and Judgment is incorrect. The 2017 taxable value stated in those documents is $1,981,412. The taxable value on the rolls for the 2017 tax year was $1,991,410. The 2017 record card is attached to confirm the numbers." Thereafter, the tribunal issued a Corrected Final Opinion and Judgment on March 5, 2017, reflecting those numbers.

Petitioner now appeals by right.

## II. STANDARD OF REVIEW

"A proceeding before the tribunal is original and independent and is considered de novo." MCL 205.735a(2). This Court's review of a final decision of the tribunal is limited. *Detroit Lions, Inc v City of Dearborn*, 302 Mich App 676, 691; 840 NW2d 168 (2013). "Unless fraud is alleged, an appellate court reviews the decision for a misapplication of the law or adoption of a wrong principle." *Podmajersky v Dep't of Treasury*, 302 Mich App 153, 162; 838 NW2d 195 (2013) (quotation marks and citation omitted). "This Court may review the tribunal's rulings regarding evidentiary issues if they involve errors of law." *Georgetown Place Co-op v City of Taylor*, 226 Mich App 33, 239; 572 NW2d 232 (1997). The appellant bears the burden of proof in an appeal from the tribunal. *Podmajersky*, 302 Mich App at 162. "The MTT's factual findings are conclusive if they are supported by competent, substantial, and material evidence on the whole record." *Detroit Lions, Inc*, 302 Mich App at 691.

## III. SANCTION

Petitioner first argues that the legal standards that should be applied demonstrate that the sanction imposed was too severe and constituted an abuse of discretion. We disagree.

On December 16, 2016, the tribunal issued a scheduling order, which required the parties to file valuation disclosures and prehearing statements by August 4, 2017. The order informed the parties of the potential sanction for failure to meet the August 4, 2017 deadline, with bold text as follows: "Valuation disclosures will **not** be admitted into evidence **unless** disclosed and furnished in accordance with this Order (even though admissible) **except** upon a finding of good cause by the Tribunal" and "Witnesses will **not** be allowed to testify **unless** disclosed in the Prehearing Statement and the Prehearing Statement is furnished in accordance with this Order **except** upon a finding of good cause by the Tribunal."

In late June 2017, petitioner's counsel Myles Hoffert had a stroke. Hoffert returned to work part-time on July 24, 2017. On the August deadline date for disclosures and prehearing statements, the parties filed a stipulated motion for a one-month extension of the deadline to September 5, 2017. Nothing in the stipulation motion identified the reason for the extension. The tribunal granted the motion and issued an accompanying order that stated, "[n]o further extensions shall be given without a showing of good cause by the parties."

Respondent timely filed and served its valuation disclosures and prehearing statement on the September 5 extended deadline. Three days later, on September 8, the tribunal issued a Notice of Prehearing Conference, which, among other things, stated that the conference would commence as a show cause hearing on petitioner's failure to timely file its valuation disclosures and prehearing statement. On September 14—nine days after the extended deadline—petitioner filed and served two appraisals as its valuation disclosures, along with a prehearing statement.

In an October 17, 2017 Summary of Prehearing Conference and Scheduling Order, the tribunal addressed petitioner's untimely filings:

> As noted above, Prehearing Statements and Valuation Disclosures were due to be filed and exchanged by August 4, 2017. On that day, a Motion to Extend Time to File Valuation Disclosures and Prehearing Statements was filed, with no reason underlying the request. In the Motion to Extend it was requested that the filing deadline be extended until September 5, 2017. On August 7, 2017, out of courtesy to the parties, the Tribunal granted the Motion. Respondent filed and exchanged its valuation disclosure and prehearing statement on September 5, 2017. Petitioner filed and exchanged its valuation disclosure, consisting of two appraisals, and its prehearing statement, on September 14, 2017. Petitioner did not contact the Tribunal for a further extension of the valuation disclosure and prehearing statement due date, with or without any reason for the delay. Petitioner did contact the Tribunal for permission to participate in the prehearing conference by telephone, even though required to attend in person, which was granted.

> Upon a review of Petitioner's offered appraisals, the Tribunal noted they were signed on May 9 and 11, 2017, almost three months before the August 4, 2017 valuation disclosure due date, however, an extension was requested until September 5, 2017. Further neither author of the appraisals was included on Petitioner's witness list, leaving the Tribunal to question the necessity of the valuation disclosures admittance into evidence, the necessity of their authors' testimony, and the necessity for due date extension. The Tribunal finds there is no good cause to allow Petitioner to offer its valuation disclosures for admittance into evidence or to offer its witnesses to testify. As such, Petitioner may not offer witnesses or a valuation disclosure at the hearing of this matter.

> It should be noted that the Tribunal has not dismissed Petitioner's appeal, but applied the lessor [sic] sanction of precluding its valuation disclosure and witness testimony at the hearing of this matter. [*Grimm v Treasury Dep't*, 291 Mich App 140; 810 NW2d 65 (2010)]. Further, Petitioner was not held in default, indicating it may participate in the proceedings through opening and closing statements and cross-examination of Respondent's witnesses.

Petitioner filed a Motion for Reconsideration on October 26, 2017. Petitioner's motion cited two "extenuating circumstances" for the nine-day delay in filing the valuation disclosure. First, as demonstrated by the Affidavit of Leonard Nadolski, an officer of the car dealership, the dealership had been engaged in "extremely sensitive" lease renewal negotiations and the

valuation information could not be publicly disclosed without seriously compromising the dealership's negotiating position. Second, petitioner's attorney (Hoffert) was hospitalized on June 28, 2017, as evidenced in an affidavit of his physician, Dr. Barry W. Feldman, M.D. Feldman's affidavit provided that Hoffert had been in rehabilitation for three months and to "please excuse his delay in filing papers in a timely fashion." As previously stated, Hoffert had returned to work on a part-time basis July 24, 2107.

Petitioner's motion indicated that on September 18, 2017, the same day the lease negotiations were completed, the release of the valuations was authorized. Petitioner noted that respondent did not object and that there was no possible prejudice as a result of the delay. Citing *Vicencio v Ramirez*, 211 Mich App 501; 536 NW2d 280 (1995), petitioner argued that the sanction imposed was too severe and constituted an abuse of discretion. Because the legal system favored disposition on the merits, petitioner argued that the Tribunal should have considered a number of *Vicencio* factors, including: (1) whether the violation was willful; (2) the party's history of refusing to comply with previous orders; (3) the prejudice to the opposing party; (4) whether there is a history of deliberate delay; (5) the degree of compliance with other parts of the court's orders; (6) attempts to cure the defect, and (7) whether a lesser sanction would better serve the interests of justice. Petitioner argued that, had the tribunal properly considered these factors, it would have found no history of non-compliance and no prejudice to respondent. Petitioner's actions were not willful, but were the result of extenuating circumstances. Petitioner also cited *Grimm v Treasury Dep't*, 291 Mich App 140; 810 NW2d 65 (2010), which held that the tribunal is required to evaluate the same factors set forth in *Vicencio* before imposing the drastic sanction of dismissal.

The tribunal denied petitioner's motion for reconsideration in a November 1, 2017, order:

The Tribunal finds that [the prior prehearing order was] thorough and complete and fully addresses Petitioner's contentions. In *Grimm v Dep't of Treasury*, the Michigan Court of Appeals summarized factors that the Tribunal should consider before imposing the sanction of dismissal. Those factors are:

> (1) whether the violation was wilful or accidental; (2) the party's history of refusing to comply with previous court orders; (3) the prejudice to the opposing party; (4) whether there exists a history of deliberate delay; (5) the degree of compliance with other parts of the court's orders; (6) attempts to cure the defect; and (7) whether a lesser sanction would better serve the interests of justice.

Here, it is clear from Petitioner's Motion that the delay in filing its Valuation Disclosure was willful in that the information was not desired to be made public until after the close of sensitive negotiations with its landlord. Thus, it was a deliberate delay based upon the negotiations and desire to keep the valuation information private. However, the Tribunal finds that the information could have been filed under seal with a motion requesting that the valuation not be made public until the negotiations were finalized. However, this was not done and the Tribunal was not even notified, until the Motion for Reconsideration, of any such negotiations. The Tribunal finds that it has considered lesser sanctions and has

determined that dismissal was not warranted at this time. The lesser sanction that was found appropriate was to preclude Petitioner from presenting witnesses and offering its valuation disclosure. This lesser sanction diminishes the prejudice to Respondent and is found to be appropriate.

With regard to the deadline falling just after Labor Day, the Tribunal is unpersuaded that this should have any bearing on the determination given that the deadline was stipulated to by the parties. There is no justification for missing an agreed upon and already extended deadline merely because it falls after a holiday weekend. Moreover, the filing was not one or two days beyond that holiday weekend and this is a meritless argument.

Finally, Petitioner also references counsel's health issues. The Tribunal finds that it was aware of counsel's stroke in June. This, in part, justified the granting of the original extension. However, counsel has other employees and again stipulated to the deadline of September 5, 2017. Overall, the Tribunal finds that the delay was deliberate based upon the negotiations mentioned above and was not due to counsel's health. Further, the Tribunal finds that TTR 237 permits the Tribunal to limit the witnesses offered to those disclosed on the witness list. As indicated above, neither of the authors of Petitioner's appraisals were disclosed as witnesses. Thus, it is not clear how Petitioner intended to introduce the valuation at hearing.

Given the above, Petitioner has failed to demonstrate a palpable error relative to the Prehearing Conference Summary that misled the Tribunal and the parties and that would have resulted in a different disposition if the error was corrected.

We conclude that this issue is rather straight forward – because there was no dismissal, the *Vicencio* and *Grimm* frameworks simply do not apply. In *Vicencio*, the trial court dismissed a party's breach of contract action for the party's failure to appear on the trial date. Our Court warned that "[d]ismissal is a drastic step that should be taken cautiously." *Vicencio*, 211 Mich App at 506. Therefore, "[b]efore imposing such a sanction, the trial court is required to carefully evaluate all available options on the record and conclude that the sanction of dismissal is just and proper." *Id.*

This Court has summarized some of the factors that a court should consider before imposing the *sanction of dismissal*: (1) whether the violation was wilful or accidental; (2) the party's history of refusing to comply with previous court orders; (3) the prejudice to the opposing party; (4) whether there exists a history of deliberate delay; (5) the degree of compliance with other parts of the court's orders; (6) attempts to cure the defect; and (7) whether a lesser sanction would better serve the interests of justice. This list should not be considered exhaustive. [*Id.* at 507 (emphasis added; citation omitted).]

In *Grimm*, this Court extended *Vicencio* to tax proceedings:

We find the analogy appropriate and adopt the factors summarized in *Vicencio* for the Tax Tribunal to consider before imposing the drastic sanction of dismissal. When considering the *sanction of dismissal*, the record should reflect that the Tax Tribunal gave careful consideration to the factors involved and considered all its options in determining what sanction was just and proper in the context of the case before it. [*Grimm*, 291 Mich App at 149–150 (emphasis added; citation omitted).]

*Vicencio* and *Grimm* apply where there has been a dismissal. Here, there was no dismissal and those cases have no application. We reject petitioner's attempt to categorize the sanction as the functional equivalent of a dismissal. As discussed in greater length below, unlike most civil proceedings, the tribunal has an independent duty "to apply its expertise to the facts of a case to determine the appropriate method of arriving at the true cash value of property, utilizing an approach that provides the most accurate valuation under the circumstances." *Jones & Laughlin Steel Corp v City of Warren*, 193 Mich App 348, 353; 483 NW2d 416 (1992). "The tribunal may not automatically accept a respondent's assessment, but must make its own findings of fact and arrive at a legally supportable true cash value." *Id.* at 355. Therefore, even though petitioner was precluded from presenting valuation evidence, the tribunal's independent duty prevents the sanction from being the functional equivalent of a dismissal. And, as discussed at length, the tribunal did just that – accepting and rejecting respondent's evidence to arrive at its own conclusions. Additionally, petitioner was not precluded from attacking respondent's valuations, which it did to a limited degree. Such limitation was, as discussed below, of its own making.

Rather than look to the *Vicencio* and *Grimm* factors, the tribunal was required to determine whether there was good cause for petitioner's failure to timely file its valuations. The tribunal clearly considered both petitioner's attorney's health and the sensitive lease negotiations and determined that petitioner had other means of protecting its interests, including simply apprising the tribunal of what was happening, having the valuations filed under seal, or taking other actions beyond simply refusing to comply with the tribunal's order. Given petitioner's actions were willful, the tribunal did not abuse its discretion when it refused to allow petitioner to present valuation evidence at the hearing.

IV. OFFER OF PROOF

Petitioner argues that the tribunal erred when it refused to allow petitioner to make an offer of proof. We disagree.

"[I]t is well settled that in order to preserve the issue of the admissibility of evidence for appeal, the proponent of evidence excluded by the trial court must make an offer of proof." *Detroit v Detroit Plaza Ltd Partnership*, 273 Mich App 260, 291; 730 NW2d 523 (2006). "[A]n offer of proof serves the dual purpose of informing the trial court of the nature and purpose of the evidence sought to be introduced, and of providing a basis for the appellate court to decide whether to sustain the trial court's ruling." *Id.* A party's failure to make an offer of proof regarding the substance of the evidence alleged to have been improperly excluded generally precludes appellate review because the Court is not in a position to determine whether the trial

court erroneously excluded the evidence that would have affected the party's substantial rights. *Id*.

However, an offer of proof is unnecessary where the substance of the evidence excluded is sufficiently apparent or specific from the context. *Kent Concrete, Inc v Hosp Bldg & Equip Co*, 150 Mich App 91, 94 n 1; 388 NW2d 257 (1986). Where it is obvious from the context of the party's argument that it intended to introduce evidence for a particular purpose, there is a sufficient basis for the trial court to make an intelligent decision regarding the admissibility of the evidence and, likewise, allows an appellate court to review the trial court's determination. *Id.*

Here, the tribunal excluded petitioner's valuations because petitioner failed to submit them in accordance with the tribunal's scheduling order and the parties' stipulation to extend the time for filing. It was obvious from the context of petitioner's argument that it intended to introduce the valuations as evidence of the property's value. There was, therefore, a sufficient basis for the tribunal to make an intelligent decision regarding the admissibility of the evidence and for this Court to review the tribunal's determination. The tribunal did not abuse its discretion in refusing to allow petitioner to make an offer of proof when the substance of the evidence excluded is sufficiently apparent or specific from the context.

## V. PETITIONER'S REBUTTAL WITNESS

Petitioner next argues that the tribunal erred when it prevented petitioner's rebuttal witness from testifying. We disagree.

"Rebuttal evidence is evidence that explains, contradicts, or otherwise refutes a defendant's evidence. Its purpose is to undercut the defendant's case and not merely to confirm that of the plaintiff." *Sullivan Indus, Inc v Double Seal Glass Co, Inc*, 192 Mich App 333, 348; 480 NW2d 623 (1991). For that reason, "a plaintiff may not introduce during rebuttal new and independent facts competent as part of his testimony in chief unless permitted to do so by the court." *Id*. "[T]he test of whether rebuttal evidence was properly admitted is not whether the evidence could have been offered in the [plaintiff's] case in chief, but, rather, whether the evidence is properly responsive to evidence introduced or a theory developed by the defendant." *People v Figgures*, 451 Mich 390, 399; 547 NW2d 673 (1996). "As long as evidence is responsive to material presented by the defense, it is properly classified as rebuttal, even if it overlaps evidence admitted in the prosecutor's case in chief." *Id*.

At the close of respondent's proofs, petitioner indicated that it would like to call a rebuttal witness. Respondent objected, noting that the previous order barred petition from calling all witnesses. The tribunal disagreed: "rebuttal witnesses don't have to be on a prehearing statement, on a witness list, so I'm going to allow it." However, petitioner did not get far with its rebuttal witness, Daniel Tomlinson. Petitioner's first question appeared to violate the previous order. The following exchange took place:

BY MR. HOFFERT:

*Q.* Mr. Tomlinson, you prepared an appraisal report – am I correct that you prepared an appraisal report that wasn't allowed to be introduced into evidence?

*Judge Gadola*: Mr. O'Loughlin, you had something you wanted to say?

*Mr. O'Loughlin*: Yes, your Honor. I would object. I feel like this Court has dealt with the appraisal report ad nauseam. We've been to the Court of Appeals, we had an objection at the beginning of this case. I do not believe that the admission or lack thereof has anything to do with the rebuttal testimony in this case, and frankly, has nothing to do with the valuation issue in this case.

*Judge Gadola*: Any response, Mr. Hoffert?

*Mr. Hoffert*: Yes, there is a response. He's a rebuttal witness. He is rebutting – I just asked him if he prepared one that wasn't allowed. I didn't ask him to introduce it. I didn't – I haven't tried to introduce it, you've told me I can't introduce it. It's done.

*Judge Gadola*: I'm going to sustain the objection. I don't want that question as part of the record. If you would like to ask Mr. Tomlinson if he is your review appraiser, if he took a look at them, Mr. Widmer's appraisal, if he has any comments, that's fine. But he's not going to give an opinion of value.

*Mr. Hoffert*: I'm not asking him to give an opinion.

*Judge Gadola*: I understand, I understand. But we're not going to refer to any appraisals that aren't admitted into evidence.

*Mr. Hoffert*: Your Honor, if I may?

*Judge Gadola*: Yes, please.

*Mr. Hoffert*: I think you have a duty to make an independent verification.

*Judge Gadola*: Absolutely.

*Mr. Hoffert*: I don't think you can make that independent verification without questions regarding what was done in the appraisal. Not the numbers or how they came about, but what was done in the – I'm trying to bring out the fact that there is this ordinance and there are appraisals that have – I mean, there are letters of estimates that have been made on the fixing of certain things wrong with the property. I'm trying to bring those out. I'm not asking for any valuation or anything else.

*Judge Gadola*: I'm sorry. Mr. O'Loughlin?

*Mr. O'Loughlin*: Yes, your Honor. I would like to lodge another objection. The documents referred to by Mr. Hoffert were attached to and made a part of the – I believe the reports submitted by Mr. Tomlinson in this case. And I believe that what Mr. Hoffert is attempting to do here is sidestep the Court's rule and introduce valuation testimony through the guise of some issue that has never been addressed by Mr. Widmer's testimony.

I think the issue has been made clear that the – you cannot provide rebuttal testimony to something that was not testified to. And this water issue, despite Mr. Hoffert's broad protestation, has not been shown to be at all relevant to this case.

*Mr. Hoffert*: I'm not bringing out any – I'm not asking him if he – if he attached the water ordinance, I'm not asking if he attached any of these estimates for value. I'm just trying to show you – to show you that there are problems with the property that weren't addressed by Mr. Widmer so you can make an – make a decision that is knowledgeable.

*Judge Gadola*: Mr. O'Loughlin?

*Mr. O'Loughlin*: Your Honor, that's not rebuttal testimony.

*Judge Gadola*: I have to agree with Mr. O'Loughlin. I'm allowing your rebuttal witness. Rebuttal – you are a very experienced attorney, I respect your credentials and your ability, and you know, as we all know here as officers of the court, rebuttal is limited to what was – what was testified to.

*Mr. Hoffert*: Or what was not testified to.

*Judge Gadola*: Okay.

*Mr. Hoffert*: I understand, your Honor.

*Judge Gadola*: All right. Mr. Tomlinson is – if you would like to ask him questions and have him rebut Mr. Widmer's appraisal, which is what I assume you're going to do, I have no problem with that.

*Mr. Hoffert*: This is part of the rebuttal. No more questions, your Honor.

It is clear from the record that the tribunal, in fact, invited petitioner to offer rebuttal evidence that would contradict Widmer's testimony. Instead, petitioner stubbornly sought to question Tomlinson about his own report. Such questioning was not responsive to Widmer's testimony and was, therefore, properly excluded. Petitioner has framed the issue in a way that makes it appear as though the tribunal violated its own rules of procedure in limiting Tomlinson's testimony, but the record reveals that the opposite occurred.

## VI. INDEPENDENT VALUATION

Finally, petitioner argues that the tribunal's decision should be reversed because the judge failed to conduct an independent determination of the value based on all relevant research and information. We disagree.

"The Tax Tribunal is under a duty to apply its expertise to the facts of a case to determine the appropriate method of arriving at the true cash value of property, utilizing an approach that provides the most accurate valuation under the circumstances." *Jones & Laughlin Steel Corp v City of Warren*, 193 Mich App 348, 353; 483 NW2d 416 (1992). "The tribunal may not automatically accept a respondent's assessment, but must make its own findings of fact and arrive at a legally supportable true cash value." *Id.* at 355.

The tribunal issued a Final Opinion and Judgment on February 23, 2018. The tribunal set forth Widmer's testimony in great length, including the various approaches and the specifics regarding the many comparables utilized. The tribunal agreed with Widmer that the highest and best use of the property as improved was the current use as an automobile dealership. The tribunal further agreed with Widmer that the income approach was not the best approach in determining true cash value. It agreed with Widmer that the sales comparison approach to value was the appropriate technique to utilize in determining the true cash value and generally believed that Widmer appropriately searched for sales comparables and "for the most part, properly adjusted the comparable properties to be consistent with the characteristics of the subject property." However, the tribunal was "not persuaded by Mr. Widmer's adjustment for location." It found that "the location adjustments are so high that they suggest the comparable properties are not truly comparable to the subject." The tribunal noted:

> The Tribunal finds 2017 comparable four/sale eight is the best comparable to the subject property. Comparable four/sale eight has only a five percent location adjustment indicating to the Tribunal that it is most similar to the dynamic Royal Oak location, due to demographics traffic counts and accessibility. As such, the Tribunal finds the true cash value of the subject property for the 2017 tax year is best reflected by the adjusted sale price of comparable eight, determined by Mr. Widmer, of $107.54. Multiplying $107.54 x the square footage of the property, results in a true cash value of $4,691,863, rounded to $4,700,000. For the 2016 tax year, the Tribunal again finds comparable four/sale eight to be the best comparable because of its appropriate location adjustment. The comparable sold in October 2016, as such it requires a market conditions adjustment to reflect its value as of December 31, 2015. Mr. Widmer persuasively testified that he adjusted for market conditions at 5% per annum, which equates to .42% per month. Comparable eight sold 22 months after tax day 65 and as such, a negative adjustment of 9.24% ($10.37 per square foot) must be applied. The adjusted dollar per square foot of comparable eight for the 2016 tax year is $101.83. The dollar value per square foot determination is multiplied by the square footage of the property of 43,629 for a true cash value of $4,442,741, or $4,400,000 rounded, for the 2016 tax year. With regard to the value of the modular used-car office, the Tribunal finds its market value is insignificant and doesn't affect its conclusion of true cash value. [Footnotes omitted.]

The tribunal concluded that the cost approach was not the appropriate technique to determine true case value. It found that Widmer "properly determined the replacement cost new of the property and [was] persuaded by his conclusion of land value, however, the Tribunal [found] Mr. Widmer's calculation of depreciation to be suspect." The tribunal concluded:

> The Tribunal finds, based upon the Findings of Fact and the Conclusions of Law set forth herein, that the income approach is not the appropriate valuation technique to utilize with regard to the subject property, further, it finds the cost approach to be less reliable than the sales approach. The Tribunal is under a duty to apply its own expertise to the facts of the case to determine the appropriate method of arriving at the true cash value of the property, utilizing an approach that provides the most accurate valuation under the circumstances. The Tribunal has considered all three approaches to value, and independently concludes to the true cash value of the subject property under the sales approach, for the 2016 and 2017 tax years.

The foregoing demonstrates that the tribunal applied its expertise to the facts of a case to determine the appropriate method of arriving at the true cash value of property, utilizing an approach that provides the most accurate valuation under the circumstances. Contrary to petitioner's assertions, the tribunal did not blindly accept Widmer's testimony. Instead, it made its own findings of fact and arrived at a legally supportable true cash value.

Affirmed.

/s/ Jonathan Tukel
/s/ Kirsten Frank Kelly
/s/ Michael J. Kelly

-12-