Corrigan, J.
Petitioner, a nonprofit organization, leased housing to disabled and low-income individuals during the tax years at issue. In question is whether petitioner was entitled to a property-tax exemption for charitable institutions under MCL 211.7o(l), which requires that the charitable institution has “occupied” the property. We affirm the Court of Appeals holding that because petitioner did not occupy the property under the unambiguous language of MCL 211.7o, it was not entitled to the property-tax exemption. Petitioner did not maintain a regular physical presence on the property, but instead leased the housing on the property for tenants to use for their own personal purposes. Because the Court of Appeals reached the opposite result in Pheasant Ring v Waterford Twp, 272 Mich App 436; 726 NW2d 741 (2006), which involved similar facts, we overrule that decision.
I. FACTS AND PROCEDURAL HISTORY
Petitioner is a nonprofit corporation whose stated purpose is to “creat[e] integrated housing alternatives for low income individuals and families, and persons with disabilities, to interact with the general public, and to promote the establishment of safe, affordable and accessible as necessary housing for low-income individuals and families and persons with disabilities.”[1] Petitioner owns 51 single-family homes in the Detroit *47 area. It leases or rents these homes to qualified individuals who are referred by its parent corporation, Community Living Services.[2] Petitioner’s clients are individuals whose low-income or disability status qualify them to receive federal Supplemental Security Income benefits. All of petitioner’s tenants pay rent under traditional written leases. These lease agreements include provisions for security deposits, late-payment fees, and hold-over fees. Petitioner has no ongoing day-to-day presence in the homes.
At issue in this case are five houses that petitioner owned and leased to persons who qualified under petitioner’s statement of purpose. Petitioner requested from respondent city of Livonia an exemption from property taxes under MCL 211.7o(1) for tax years 2003 and 2004, arguing that the five houses were exempt because petitioner “owned and occupied” the houses in furtherance of its charitable purpose. After respondent denied petitioner’s request, petitioner appealed in the Michigan Tax Tribunal (MTT).
The MTT affirmed, concluding that petitioner was not entitled to the property-tax exemption because petitioner did not occupy the houses within the meaning of MCL 211.7o(1). The MTT observed that the caselaw interpreting the occupancy requirement of MCL 211.7o(1) had held that a charitable institution “occupied” the housing when its provision of housing was incidental to the overall corporate purpose. The MTT pointed out that, in this case, petitioner’s tenants were not using the homes for charitable purposes. The MTT concluded that petitioner did not occupy the properties under MCL 211.7o for the following reasons:
*48 To say that Liberty Hill occupies the properties in these instances where Liberty Hill lessees reside at the subject properties does not comport with the plain meaning of the statute. In a landlord-tenant relationship, the lessee is generally considered the occupant and the lessor does not generally have occupancy rights during the term of the lease. See Frenchtown Villa v Meadors, 1117 Mich App 683 [324 NW2d 133] (1982).
In this case, involving single family homes, it is a significant stretch to say that the non-profit [sic] corporate owner/lessor occupies the properties by virtue of leasing them to tenant occupants consistent with the non-profit’s [sic] corporate purposes.
In these consolidated cases, while Liberty Hill, a nonprofit charitable institution, owns the properties, it does not occupy any of them. The exemption is apparently meant for instances where the offices and operations of the non-profit [sic] charitable institution exist.
The Court of Appeals affirmed in an unpublished opinion per curiam. The panel explained that it agreed with the MTT’s reasoning and conclusion:
The tribunal’s opinion points out that in a landlord-tenant relationship, the lessee is the occupant while the lessor, here petitioner, does not have occupancy rights during the terms of the lease. Further, to find that the non-profit [sic] corporate owner/lessor occupies the properties by virtue of leasing them to tenant-occupants, even though the tenancy is consistent with the non-profit’s [sic] corporate purposes, requires a “significant stretch”. We agree. [Liberty Hill Housing Corp v City of Livonia, unpublished opinion per curiam of the Court of Appeals, issued May 16, 2006 (Docket No. 258752), p 2 (emphasis in original).]
The panel concluded that petitioner did not occupy the properties that it leased to tenants for the tenants’ personal housing needs.
While petitioner’s application for leave to appeal the Court of Appeals decision was pending, the Court of *49 Appeals decided Pheasant Ring, in which it held that the petitioner charitable institution “occupied” property under MCL 211.7o(l) when it leased housing to tenants in furtherance of its charitable purpose of providing housing to individuals with autism. No appeal was taken from the Court of Appeals decision in Pheasant Ring.
To clarify whether a charitable institution that leases property to others in furtherance of its charitable purpose occupies the property for purposes of the property-tax exemption under MCL 211.7o(l), we ordered oral argument on the application in the instant case and directed the parties to address whether Pheasant Ring was correctly decided. 477 Mich 1018 (2007).
II. STANDARD of review
In Wexford Med Group v City of Cadillac, 474 Mich 192, 201; 713 NW2d 734 (2006), this Court described the standard of review for MTT decisions as follows:
The standard of review for Tax Tribunal cases is multifaceted. Where fraud is not claimed, this Court reviews the tribunal’s decision for misapplication of the law or adoption of a wrong principle. Michigan Bell Tel Co v Dep’t of Treasury, 445 Mich 470, 476; 518 NW2d 808 (1994). We deem the tribunal’s factual findings conclusive if they are supported by “competent, material, and substantial evidence on the whole record.” Id., citing Const 1963, art 6, § 28 and Continental Cablevision v Roseville, 430 Mich 727, 735; 425 NW2d 53 (1988). But when statutory interpretation is involved, this Court reviews the tribunal’s decision de novo. Danse Corp v Madison Hts, 466 Mich 175; 644 NW2d 721 (2002).
This Court has held that statutes exempting persons or property from taxation must be narrowly construed in favor of the taxing authority. See, e.g., id. supra at 204.
*50 III. LEGAL BACKGROUND
A. MCL 211.7o
The statute at issue, MCL 211.7o, creates an ad valorem property-tax exemption for charitable institutions. Wexford Med Group, supra at 199. At the relevant times, MCL 211.7o(1) provided: “Real or personal property owned and occupied by a nonprofit charitable institution while occupied by that nonprofit charitable institution solely for the purposes for which it was incorporated is exempt from the collection of taxes under this act.” (Emphasis added.)[3] As a consequence of the statutory requirements, courts should consider three factors when determining whether the tax exemption under MCL 211.7o(1) applies:
(1) The real estate must be owned and occupied by the exemption claimant;
(2) the exemption claimant must be a nonprofit charitable institution; and
(3) the exemption exists only when the buildings and other property thereon are occupied by the claimant solely for the purposes for which it was incorporated. [Wexford Med Group, supra at 203 (emphasis added).]
Here, it is undisputed that petitioner owned the properties at issue. The main point of contention is whether petitioner “occupied” the properties.
B. CASELAW INTERPRETATIONS
Petitioner argues that this Court, in analyzing the exemption under MCL 211.7o(1) and its predecessors, *51 has construed “occupation” to mean “charitable use” and has not required physical possession by the exemption claimant. In making this argument, petitioner relies on cases that interpreted the third element of MCL 211.7o(1), that the property be occupied solely for a charitable purpose, and not the first element, that the real estate must be owned and occupied by the claimant. A review of this Court’s caselaw yields no support for petitioner’s argument.
Our first case addressing the occupation requirement of Michigan’s statutory tax exemption for nonprofit institutions was Detroit Young Men’s Society v Detroit, 3 Mich 172 (1854).[4] In that case, the plaintiff was incorporated “for the purpose of moral and intellectual improvement” and owned a building in the city of Detroit that included a library. Id. at 180. The plaintiff offered for rent by third parties two stores on the first floor and two small offices on the second floor, but the “remainder of the building . . . was used entirely for the purposes of the society . ...” Id. at 173 (opinion syllabus). Because the 1853 statute required “actualG” occupation by the institution,[5] this Court held that the *52 occupation must be exclusive and ruled that the property was subject to taxation, “subject to a deduction of the value of the tenements actually used and occupied by them for the purposes for which they were incorporated, from the entire value of the lot and building.” Id. at 184.
In Webb Academy v Grand Rapids, 209 Mich 523, 525; 177 NW 290 (1920), the plaintiff, an incorporated educational institution, sought a property-tax exemption for educational institutions.[6] The plaintiff conducted school business on the property, but the founder of the school and his wife, a teacher at the school, lived on the property, along with a student who helped with upkeep in exchange for room and board. Id. at 532-533. This Court indicated that the “owned and occupied” element of the exemption statute was not at issue when it noted: “That plaintiff was in full possession and control of the premises, and maintained an academy there, is not questioned.” Id. at 535. It then agreed with the trial court that the property was occupied by the educational institution solely for the purposes for which it was incorporated and that the other minor uses, such as housing incidental to the school uses, did not defeat that conclusion. Id. at 539. Thus, this Court’s decision focused on whether the property was occupied solely for *53 the purposes for which the plaintiff was incorporated, not on whether actual occupancy was required to qualify for an exemption.
Likewise, in Gull Lake Bible Conference Ass’n v Ross Twp, 351 Mich 269, 273; 88 NW2d 264 (1958), this Court noted that there was no dispute about whether the plaintiff owned or occupied the property. In that case, the plaintiffs stated purpose was “[t]o promote and conduct gatherings at all seasons of the year for the study of the Bible and for inspirational and evangelistic addresses.” Id. at 271. The plaintiff sought a property-tax exemption for charitable organizations.[7] Besides a tabernacle and youth chapel (for which the tax-exempt status was not contested), the property included an old hotel building used to house employees, a fellowship center building, a trailer campsite for persons attending the conference and living in trailers, cottages that were rented to persons attending the conference, a gravel pit, a picnic area, boat docks, a bathhouse, a beach, a playground, horseshoe and badminton courts, and parking areas. Id. at 272. This Court determined that the housing and recreational facilities on the property were necessary to fulfill the plaintiffs purpose. Id. at 275. Again interpreting the third element of the tax-exemption statute, this Court held that the property was occupied by the plaintiff solely for the purpose for which it was incorporated. Id. at 274-275.
*54 Finally, in Oakwood Hosp Corp v State Tax Comm, 374 Mich 524, 526; 132 NW2d 634 (1965) (Oakwood Hosp I), the plaintiff was a nonprofit corporation that owned and operated a hospital. The plaintiff claimed a tax exemption for property on which its hospital facilities were located.[8] Id. Also on the property were six houses that provided housing near the hospital for the resident physicians and interns whose services and availability to the hospital at all times were essential to the operation of the hospital. Id. at 527. This Court held that the plaintiff was entitled to the tax exemption for the entire property, including the houses. This Court explained that housing the doctors and interns near the hospital was necessary to the proper functioning of the hospital. Id. at 530. Therefore, the houses were “occupied in furtherance of and for the purposes for which plaintiff was incorporated and for hospital and public health purposes.” Id.[9] Thus, this Court was again called on to address the third element of the tax-exemption statute: whether the property was occupied for the purposes for which the claimant was incorporated. This Court simply did not address the first element: whether the property was “owned and occupied.”[10]
*55 C. PHEASANT RING v WATERFORD TWP
Five months after the Court of Appeals issued its opinion in the instant case, the Court of Appeals decided Pheasant Ring. In Pheasant Ring, supra at 440, the petitioner was a nonprofit corporation organized to carry on educational and other charitable activities, including establishing and supporting a transitional community for persons with autism. The petitioner sought a property-tax exemption for a building that it owned and rented to persons with autism. Id. at 441-442. Nothing in the Court of Appeals opinion stated that any of the petitioner’s employees resided in the building to supervise or monitor the tenants. Nonetheless, the Court of Appeals held that the petitioner “occupied” the home within the meaning of MCL 211.7o(1). The Court looked to the dictionary definition of “occupy” and then, without discussing Detroit Young Men’s Society, Webb Academy, Gull Lake, or Oakwood Hosp I, held that the petitioner “occupied” the building because it used the building in furtherance of its charitable purpose. The panel held, in pertinent part:
The Township asserts that Pheasant Ring does not occupy the property because the location of its offices is not physically on the property at issue and it rents the property *56 to tenants. This interpretation of the requirements for tax exemption is too narrow and restrictive. There is no dispute that Pheasant Ring owns the property. Although Pheasant Ring does not use the property for its own offices, the property is occupied by tenants of Pheasant Ring in furtherance of its charitable purposes. This Court, in determining whether a charitable organization “occupied” a property for purposes of qualifying for a tax exemption, has determined that “[t]he proper test is whether the entire property was used in a manner consistent with the purposes of the owning institution.” Holland Home v Grand Rapids, 219 Mich App 384, 398; 557 NW2d 118 (1996). Under this criterion, Pheasant Ring occupied the residence. [.Pheasant Ring, supra at 442.]
IV ANALYSIS
We conclude that under the plain language of MCL 211.7o(l) and this Court’s previous caselaw, the Court of Appeals correctly decided this case and incorrectly decided Pheasant Ring.
First, the Court of Appeals opinion in the instant case is consistent with the statutory language, whereas Pheasant Ring is not. Webster’s Universal College Dictionary (1997) defines “occupy” as follows:[11]
—v.t. 1. to have, hold, or take as a separate space; possess, reside in or on, or claim: The orchard occupies half the farm. 2. to be a resident or tenant of; dwell in. 3. to fill *57 up, employ, or engage: to occupy time reading. 4. to engage or employ the mind, energy, or attention of: We occupied the children with a game. 5. to take possession and control of (a place), as by military invasion. —v.i. 6. to take or hold possession.
We conclude that the second meaning is the one the Legislature intended. The third, fourth, and fifth meanings in the definition are clearly not relevant here.[12] The first meaning defines “occupy” as “to have, hold,. .. possess, ... or claim[.]” These parts of the definition are synonymous with ownership.[13] Because the statute uses the conjunctive term “owned and occupied,” however, the Legislature must have intended different meanings for the words “owned” and “occupied.” Otherwise, the word “occupied” would be mere surplusage. “Courts must give effect to every word, phrase, and clause in a statute, and must avoid an interpretation that would render any part of the statute surplusage or nugatory.” Koontz v Ameritech Services, Inc, 466 Mich 304, 312; 645 NW2d 34 (2002). Thus, the Legislature must have intended the term “occupy” to mean the other aspect of the dictionary definition: to “reside in or on” or “to be a resident or tenant of; dwell in.” This aspect of the
*58 definition especially makes sense when viewed in its specific context;[14] it is “real or personal property” that must be “occupied.” “Reside” means “1. to dwell permanently or for a considerable time; live. 2. (of things, qualities, etc.) to be present habitually; be inherent ([usually followed] by in).” Webster’s Universal College Dictionary (1997). Thus, aided by this dictionary definition, we conclude that to occupy property under MCL 211.7o(l), the charitable institution must at a minimum have a regular physical presence on the property.[15]
Using this definition, the Court of Appeals in the instant case correctly held that petitioner did not occupy property that it leased to others and did not physically reside in.[16] In this situation, the tenants, not petitioner, actually “occupied” the property. We agree with the Court of Appeals that “to find that the nonprofit [sic] corporate owner/lessor occupies the properties by virtue of leasing them to tenant-occupants, even though the tenancy is consistent with the non-profit’s [sic] corporate purposes, requires a ‘significant stretch’.” Liberty Hill, supra at 2 (emphasis in original.) The Pheasant Ring panel’s holding that a nonprofit corporation occupies a property merely by virtue of the fact that the property is being used in a manner *59 consistent with the corporation’s purpose is at odds with the statute’s plain language.
The Court of Appeals holding in the instant case is further supported by this Court’s decisions in Webb Academy, Gull Lake, and Oakwood Hosp I. Although those decisions did not focus on the occupancy requirement of the statute, but focused instead on the part of the statute requiring that the property be occupied “solely for the purposes for which it was incorporated,” the plaintiffs in those cases were actually physically present on the property when they engaged in activities that carried out their nonprofit goals. Here and in Pheasant Ring, on the other hand, the petitioners were not present on the properties.
V RESPONSE to the dissent
The dissent and petitioner incorrectly conclude that the term “occupy” is synonymous with “use.”[17] In arguing that “occupy” means “use,” the dissent selectively quotes the fifth of five suggested meanings of “occupancy” in Black’s Law Dictionary (8th ed).[18] The first definition of “occupancy” suggested, however, *60 reads: “The act, state, or condition of holding, possessing, or residing in or on something; actual possession, residence, or tenancy, [especially] of a dwelling or land” Id. (emphasis added). This definition is consistent with the first two meanings of “occupy” suggested in Webster’s Universal College Dictionary (1997), one of which we adopt today.
We reject the dissent’s argument that interpreting “occupied” to mean “reside[d] in or on” is incongruous with the Legislature’s second use of “occupied” in MCL 211.7o(1). Contrary to the dissent’s argument, a charitable institution may reside on property for charitable purposes, rather than simply dwelling on the property for no reason other than dwelling itself. For example, the doctors and interns in Oakwood Hosp I resided in physicians’ housing “in furtherance of and for the purposes for which plaintiff was incorporated and for hospital and public health purposes.” Oakwood Hosp I, supra at 530.
The dissent argues that charitable institutions do not typically reside in a place because they are inanimate. Clearly, just as inanimate things may not “use” property, they may not “reside” on property. Charitable institutions, however, are not merely inanimate bodies; they are made up of people. A charitable institution’s members, employees, or volunteers may dwell on the property or at least be habitually present on the property, which is consistent with the meaning of “reside.” The dissent contends that a charitable institution may not “reside in” certain property, such as a swimming pool. Although one obviously cannot dwell in a swimming pool, one can maintain a regular physical presence at the pool (e.g., by habitually swimming there) or on the property that contains the pool. Either would generally be sufficient to occupy the property.
*61 In citing Oakwood Hosp I to support its argument that the term “occupied” means “used,” the dissent conflates the following two factors for determining whether the tax exemption under MCL 211.7o(1) applies:
(1) The real estate must be owned and occupied by the exemption claimant;
(3) the exemption exists only when the buildings and other property thereon are occupied by the claimant solely for the purposes for which it was incorporated. [Wexford Med Group, supra at 203.]
As discussed, the Oakwood Hosp I Court addressed only the third factor. The Court held that the nonprofit corporation occupied physicians’ housing for the purposes for which it was incorporated. The Oakwood Hosp I Court’s mention of the nonprofit corporation’s “use” of the property was a reference to this Court’s holding in Webb Academy that housing is exempt only when it is incidental to the use of the entire property for charitable purposes. Further, the Court’s discussion of the “use” of property is not inconsistent with our interpretation of the term “occupy.” It is certainly consistent for a charitable institution to use property on which it maintains a regular physical presence. Use of property is just one part of occupying it. The two terms are not mutually exclusive; “use” is merely narrower than “occupy.”
The dissent would hold that a charitable institution may occupy property by using it without maintaining a physical presence there. Such an interpretation leads to one of the following two unsatisfactory conclusions: (1) a charitable institution can occupy property without actually being physically present or (2) a charitable *62 institution need only use the property sporadically or perhaps even once to occupy it. Neither of these conclusions is consistent with proper meaning of the term “occupy.” Rather, a charitable institution must maintain a regular physical presence on the property to occupy the property under MCL 211.7o.
VI. CONCLUSION
Petitioner did not occupy the real property to qualify for a property-tax exemption under MCL 211.7o(1). Although petitioner owned the housing, it leased the housing to others for their own personal use and had no regular physical presence in the housing. Thus, petitioner did not occupy the housing under the plain language of the statute and this Court’s interpretations of the predecessors of MCL 211.7o. Because petitioner cannot satisfy all the requirements of MCL 211.7o(1), it is not entitled to an exemption from property taxes during the tax years at issue. Accordingly, we affirm the judgment of the Court of Appeals in the instant case and overrule Pheasant Ring to the extent that it is inconsistent with this opinion.
TAYLOR, C. J., and YOUNG and Markman, JJ., concurred with Corrigan, J.

 Although petitioner’s goal is to break even while providing necessary housing and services to its clients, petitioner had operated at a deficit for the three years preceding this suit.

 Community Living Services provides the clients with additional services, such as transportation, meals, monitoring, medical assistance, repairs, maintenance, and social activities.

 MCL 211.7o(1) was last amended by 2006 PA 681. It now provides: “Real or personal property owned and occupied by a nonprofit charitable institution while occupied by that nonprofit charitable institution solely for the purposes for which that nonprofit charitable institution was incorporated is exempt from the collection of taxes under this act.”

 1853 PA 86, § 5(8) exempted from taxation the “personal property of all library, benevolent, charitable and scientific institutions, incorporated within this State, and such real estate belonging to such institutions as shall actually be occupied by them, for the purposes for which they were incorporated!.]”

 The Legislature later amended the statute to remove the word “actually.” See 1885 PA 153, § 3, providing a tax exemption for the personal property of “library, benevolent, charitable, and scientific institutions, incorporated under the laws of this State, and such real estate as shall be occupied by them for the purposes for which they were incorporated!.]” This statute was amended a few years later by 1893 PA 206 to provide a tax exemption for “[s]uch real estate as shall be owned and occupied by library, benevolent, charitable, educational and scientific institutions incorporated under the laws of this State, with the buildings and other property thereon, while occupied by them solely for the purposes for which they were incorporated ....” Thus, although the *52 statute no longer stated that “actual!]” occupancy was required, it did require that the property be both “owned and occupied” by charitable institutions and “occupied by them solely for the purposes for which they were incorporated.”

 Webb Academy involved another predecessor of MCL 211.7o, 1915 CL 4001, that, in language essentially identical to that of 1893 PA 206, exempted from taxation “[s]uch real estate as shall be owned and occupied by library, benevolent, charitable, educational and scientific institutions incorporated under the laws of this state, with the buildings and other property thereon while occupied by them solely for the purposes for which they were incorporated[.]”

 Gull Lake involved another predecessor of MCL 211.7o that exempted from taxation
[s]uch real estate as shall be owned and occupied by library, benevolent, charitable, educational or scientific institutions and memorial homes of world war veterans incorporated under the laws of this state with the buildings and other property thereon while occupied by them solely for the purposes for which they were incorporated. [MCL 211.7, as amended by 1955 PA 46.]

 At the time Oakwood Hosp I was decided, the pertinent statutory language was identical to that in effect when Gull Lake was decided. See MCL 211.7, as amended by 1961 PA 238.

 Later, in Oakwood Hosp Corp v State Tax Comm, 385 Mich 704; 190 NW2d 105 (1971) (Oakwood Hosp II), this Court reached the opposite conclusion because the Legislature had amended the statute to specifically exclude such physician housing from the property-tax exemption.

 Since Oakwood Hosp II, the Court of Appeals has addressed the tax exemption at issue several times. See, e.g., Lake Louise Christian Community v Hudson Twp, 10 Mich App 573, 580; 159 NW2d 849 (1968) (holding that the religious institution did not occupy 1,300 acres of mostly unused wooded property because the property was not frequently used for religious education), Nat’l Music Camp v Green Lake Twp, 76 Mich App 608, 612; 257 NW2d 188 (1977) (holding that the nonprofit *55 educational institutions were entitled to a property-tax exemption for 92 acres of unspoiled sand dunes on Lake Michigan because “[t]he property was used in a manner consistent with the nature of the land in such a way that the purpose for which the owning institution is exempt, education, was plainly advanced”), Kalamazoo Nature Ctr, Inc v Cooper Twp, 104 Mich App 657, 665-667; 305 NW2d283 (1981) (holding that the nonprofit institution “occupied” 31 acres of preserved wilderness land that it did not physically enter but used for observation and educational purposes), and Holland Home v Grand Rapids, 219 Mich App 384, 397-398; 557 NW2d 118 (1996) (holding that the nonprofit association did not occupy the property when a retirement home on the property was under construction on the relevant tax days). The validity of some of these opinions is questionable in light of our holding in the instant case.

 Justice Cavanagh attacks our use of a dictionary in interpreting the statutory language. He states: “The practice of reaching for a dictionary to define common words in a statute risks serving to merely confirm the writer’s assumed meaning of the word, rather than to actually advance the writer’s legal analysis.” Post at 68. We recognize that dictionaries are merely interpretive aids used by the court. Consumers Power Co v Pub Service Comm, 460 Mich 148, 163 n 10; 596 NW2d 126 (1999). But in a previous opinion authored by Justice Cavanagh, this Court held: “When determining the common, ordinary meaning of a word or phrase, consulting a dictionary is appropriate.” Title Office, Inc v Van Buren Co Treasurer, 469 Mich 516, 522; 676 NW2d 207 (2004).

 Although the dissent accuses us of cursorily dismissing three of the alternative meanings of “occupy,” we see no need to discuss these definitions in detail because they clearly do not apply. The dissent seems to prefer the third meaning in the definition: “to fill up, employ, or engage; to occupy time reading.” But the dictionary’s example using this meaning clearly demonstrates that the third meaning does not make sense in the context of the statute. One cannot “fill up” property the way one can fill up time reading. The fourth meaning does not apply because one cannot “engage or employ the mind, energy, or attention of” an inanimate object such as real property. Finally, it is preposterous to suggest that the Legislature intended the exemption to apply only if a nonprofit charitable institution conducted a successful military invasion of the property.

 Webster’s Universal College Dictionary (1997) defines “own” as “to have or hold as one’s own; possess.”

 A word that is defined in various ways is given meaning by its context or setting. Koontz, supra at 318.

 A charitable institution does not automatically occupy property if it has occupancy rights to the property. The term “occupy” requires more than merely having the “right to occupy.” As we have explained, the charitable institution must actually occupy the property, i.e., maintain a regular physical presence there.

 Petitioner is correct, however, that the fact that it charged the tenants rent does not disqualify it from the exemption. See Wexford Med Group, supra at 215 (“A ‘charitable institution’ can charge for its services as long as the charges are not more than what is needed for its successful maintenance.”).

 Similarly, the Court of Appeals in Lake Louise Christian, supra at 578, and Kalamazoo Nature Ctr, supra at 665-667, erred in concluding that “occupy” is synonymous with “use.”

 Justice Cavanagh’s dissent states that it quotes Black’s Law Dictionary merely “to draw attention to the inadequacy of a dictionary-driven approach to statutory interpretation.” Post at 68. Yet Justice Cavanagh does not explain what interpretive aid, other than his own personal vocabulary, he would prefer us to use to define the statutory term. Further, when it comes to actually interpreting the statutory language, Justice Cavanagh, despite his criticism of our reliance on a dictionary, himself turns to the dictionary definition. The dissent states that the term “ ‘occupied’ should be understood as synonymous with ‘used,’ because it is the most appropriate definition for that context.” Post at 70. Justice Cavanagh appears to derive this definition from Black’s Law Dictionary, which he quotes earlier in his opinion.