# STATE OF MICHIGAN

# COURT OF APPEALS

RYAN M. HUIZENGA,

        Petitioner-Appellant,

v

CITY OF GRAND RAPIDS,

        Respondent-Appellee.

UNPUBLISHED
September 1, 2016

No. 327682
Michigan Tax Tribunal
LC No.  14-006527-TT

Before: OWENS, P.J., and SAWYER and SHAPIRO, JJ.

PER CURIAM.

Petitioner Ryan Huizenga appeals as of right the Michigan Tax Tribunal's order determining that the issues he raised in his motion for reconsideration were without merit and setting the true cash value (TCV) of his property for tax year 2014 at $284,390. We vacate the tribunal's decision on reconsideration and remand for further proceedings.

Huizenga purchased the subject property for $185,000. He presented evidence that the previous owners had entered bankruptcy and that he had purchased it following a short sale involving two banks, a bankruptcy trustee, and a short sale negotiator. He explained that he offered $185,000 because of the condition of the property, but said that the banks fought him over the price. After his offer, the property remained on the market for almost 15 months, but no higher offers were made. Huizenga closed on the property in April 2013.[1]

In January 2014, the City of Grand Rapids notified Huizenga that the taxable value (TV) of the property for 2014 would be $188,300. Huizenga appealed the assessment to the assessor, who, after review, decreased the property's tentative TV to $157,000. Huizenga appealed the assessment before the March Board of Review, which denied his appeal and confirmed the

---

[1] According to Huizenga, the property was marketed with a listing on MLS and with a sign in the front yard.

property's TV for 2014 as $157,000.  Huizenga thereafter filed a petition in the small claims division of the Michigan Tax Tribunal, alleging that the assessed TCV and TV were excessive.[2]

Huizenga and the City submitted valuation disclosures.  The City's valuation disclosure included the property report card, which indicated that the TCV for the property was $314,085.  It also included an appraisal of the property completed by Cheryl Kooiman, an assessment officer with the City.  Kooiman's appraisal used the sales-comparison approach to value the subject property.  There were eight comparable properties in Kooiman's report and she made adjustments for differences between the subject property and each comparable.  According to her appraisal, the TCV for the subject property was $260,000.

Huizenga's valuation assigned the property a TCV of $195,000 and included as support photographic evidence documenting the interior and exterior condition of the home, quotes on various repairs, three separate appraisals,[3] a linear regression analysis Huizenga prepared that estimated the sale price between $175,010 and $217,990, and photographs of the kitchens in the sales comparables used in the appraisals.  In his supporting memorandum of law, Huizenga argued that his purchase of the home for $185,000 in an "arm's length sale" also served as good evidence of value, which was further buttressed by the significant repairs needed, the appraisals, and the linear regression analysis.

Following a hearing in the small claims division, the tribunal issued a judgment setting the property's TCV at $260,000.  The tribunal found that the "sale price, under the circumstances, did not represent the market value of the property," but did not make an express finding as to whether Huizenga's purchase of the property for $185,000 was a forced sale or was an arm's-length transaction.  The tribunal also rejected Huizenga's linear regression analysis, concluding that the analysis was skewed and was not a typical analysis.  In determining the subject property's value, the tribunal relied on the five comparable properties that exceeded 3,000 square feet.  These five properties, labeled P-1 (209 Charles), P-2 (423 Madison), P-4 (260 Paris), R-6 (238 Morris), and R-7 (319 College), were in the same market as the subject property for age, square footage, and location, and sold for $235,000, $265,000, $275,000, $335,00, $380,000 respectively.[4]  After considering aspects of these homes that made them different than

---

[2] In Michigan, property is assessed at 50 percent of its TCV.  Const 1963, art 9, § 3; MCL 211.27a(1).

[3] One appraisal was performed by Brian Kaminski.  The Kaminski appraisal used six comparable sales and determined that the TCV for the subject property was $200,000.  A second appraisal was performed by Christos Tesseris.  The Tesseris appraisal used six comparable sales and determined the TCV for the subject property was $199,000.  The third appraisal was performed by Brian Grasmeyer.  The Grasmeyer appraisal used three comparable sales and determined the TCV for the subject property was $199,000.

[4] The tribunal wrongly labeled R-6 as "305 Madison."  However, given the judgment's description of the property, it is clear that R-6 refers to the property located at 238 Morris Avenue SE.

the subject property, and weighting those differences accordingly, the tribunal determined the property's TCV to be $260,000, in the "mid-range" of the comparable sales presented.

Huizenga moved for reconsideration, asserting that the tribunal (1) erroneously used a property that did not exist, due to an error substituting "305 Madison" for 238 Morris; (2) used actual sale prices instead of adjusted sale prices; and (3) wrongfully rejected his linear regression analysis. The tribunal found that each challenge was without merit.[5]

Nevertheless, the tribunal determined that it had erred when selecting the sales comparables used to determine the property's TCV.[6] Specifically, the tribunal found that P-1 and P-4 should not have been included in the comparison based on their days on the market and that P-2 should not have been selected because its sales date was too remote to the tax day at issue to be a reliable indicator of value. The tribunal then considered additional sales comparables that it had not previously included in the comparison—305 Morris and 438 Madison. The tribunal concluded that 305 Morris should be accorded little weight given the significant differences between it and the subject property and that 438 Madison was properly excluded as too remote to the tax day at issue. Of the two remaining sales comparables, the tribunal found that R-7 had properly been given minimal weight because of its updated kitchen and that the adjusted sales price of R-6 is the "most reliable indicator of value." The tribunal further found that it had erred by basing the property's TCV on the "mid-range," or average of the comparable sales, because the average of such values does not meaningfully lead to a final value. Accordingly, the tribunal assigned the property a TCV of $284,390.

Huizenga first argues that the tribunal's valuation is not based on competent, material, and substantial evidence because no reasonable person could find that a property that sold for $185,000 in an arm's-length transaction is actually worth $284,390.[7]

---

[5] The tribunal member that made the initial decision in this case retired before hearing Huizenga's motion for reconsideration. As a result, the decision on reconsideration was made by a different tribunal member.

[6] Mich Admin Code, R 792.10257 provides that the tribunal may reconsider any decision or order upon its own initiative. Accordingly, although Huizenga did not challenge the selection of sales comparables, the tribunal was free to revisit that determination during his motion for reconsideration.

[7] "Review of a decision by the MTT is very limited." *Drew v Cass Co*, 299 Mich App 495, 498; 830 NW2d 832 (2013). "In the absence of fraud, error of law or the adoption of wrong principles, no appeal may be taken to any court from any final agency provided for the administration of property tax laws from any decision relating to valuation or allocation." Const 1963, art 6, § 28. Unless fraud is alleged, this Court reviews the tribunal's decision for a "misapplication of the law or adoption of a wrong principle." *Liberty Hill Housing Corp v City of Livonia*, 480 Mich 44, 49; 746 NW2d 282 (2008) (citation omitted). "The tribunal's factual findings will not be disturbed as long as they are supported by competent, material, and substantial evidence on the whole record." *Drew*, 299 Mich App at 499 (citation and quotations omitted). Substantial evidence is "more than a scintilla of evidence, although it may be

The starting point for determining the TV of real property is to determine the property's TCV. *Detroit Lions, Inc v City of Dearborn*, 302 Mich App 676, 696; 840 NW2d 168 (2013). A petitioner bears the burden of establishing a property's TCV. MCL 205.737(3). TCV refers to "the usual selling price at the place where the property to which the term is applied is at the time of assessment, being the price that could be obtained for the property at private sale, and not at auction sale . . . or at forced sale." MCL 211.27(1). In other words, TCV "is synonymous with fair market value." *WPW Acquisition Co v Troy*, 250 Mich App 287, 298; 646 NW2d 487 (2002).

Although Huizenga argued before the tribunal that he purchased the property in an arm's-length transaction despite the fact that it was a short sale, the tribunal never determined whether the sale was an arm's-length sale or whether it was a forced sale. If the sale was a forced sale, then it would not be indicative of the TCV of the subject property and it would be proper for the tribunal to not consider the sale price in its determination of TCV. If however the sale was an arm's-length transaction, then the sale price may be relevant to determining the property's TCV. See *Prof Plaza, LLC v City of Detroit*, 250 Mich App 473, 476; 647 NW2d 529 (2002).

The fact that Huizenga purchased the property at a short sale is not dispositive on the issue of whether the property was purchased in an arm's-length transaction or in a forced sale. "[A]n arm['s]-length transaction is characterized by three elements: it is voluntary, i.e., without compulsion or duress; it generally takes place in an open market; and the parties act in their own self-interest." *Mackey v Dep't of Human Servs*, 289 Mich App 688, 699; 808 NW2d 484 (2010) (citations and quotations omitted; second alteration in original). The Tax Commission's Bulletin 6 of 2007 provides further guidance in determining whether foreclosure sales, or other similar types of sales, are arm's-length transactions. It indicates that the following should be considered (1) "[a] determination as to whether the type of sale being reviewed is a measurable portion of the market[;]" (2) "[a] determination that the sale property was properly exposed to the market[;]" (3) "[a] physical inspection of the property to make a determination that the assessment reflects the condition of the property at the time of sale . . . [;]" (4) "[r]eceipt of a properly completed real property statement to determine the terms and conditions of the sale unless adequate alternative statistical procedures are utilized to ensure the sales are an adequate part of the market[;]" and (5) "[a] determination that the parties to the transaction were not related and each was acting in their own best interest." However, because the tribunal did not resolve this issue, we cannot analyze Huizenga's claim that the tribunal's decision was not based on substantial evidence because of the substantial difference between the sale price and the TCV as determined by the tribunal on reconsideration. Accordingly, we remand to the tribunal to make a determination as to whether the sale was an arm's-length transaction or a forced sale.

Huizenga also argues that the tribunal's valuation is not based on competent, material, and substantial evidence because it adopted, without explanation, the City's adjustments to comparable sales.

substantially less than a preponderance of the evidence." *Leahy v Orion Twp*, 269 Mich App 527, 529-530; 711 NW2d 438 (2006) (citation omitted).

The Legislature has not prescribed a method for determining TCV and, instead, has listed a number of factors to be considered in making a valuation determination. See MCL 211.27(1). In the absence of legislative guidance regarding methodology, the tribunal and the courts have recognized three acceptable and reliable methods of determining TCV: "(1) the cost-less-depreciation approach, (2) the sales-comparison or market approach, and (3) the capitalization-of-income approach." *Meadowlanes Ltd Dividend Housing Ass'n v City of Holland*, 437 Mich 473, 484-485; 473 NW2d 636 (1991) (footnote omitted). "Variations of these approaches and entirely new methods" may be utilized "if found to be accurate and reasonably related to the fair market value of the subject property." *Id*. at 485. "It is the duty of the Tax Tribunal to select the approach which provides the most accurate valuation under the circumstances of the individual case." *Antisdale v City of Galesburg*, 420 Mich 265, 277; 362 NW2d 632 (1984).

On reconsideration, the tribunal adopted the sales-comparison approach. Under this method of determining true cash value, the tribunal analyzes "recent sales of similar properties, compar[es] them with the subject property, and adjust[s] the sales price of the comparable properties to reflect differences between the two properties." *Meadowlanes*, 437 Mich at 485 n 19. Applying this approach, the tribunal evaluated the sales comparables in the four appraisals submitted by the parties and selected several properties as appropriate to use in determining value. The tribunal, however, then winnowed that list down further, ultimately finding that the "most reliable indicator of value is the adjusted sales price of R-6." The tribunal did not explain what adjustments it made, why it made them, why the adjustments were necessary, or why the rejected comparables could not be adjusted to account for the differences between them and the subject property. Instead, the tribunal accepted without explanation the adjustments to R-6 that were made by the City's assessor. Notably, the assessor offered only a cursory explanation for the adjustments to the eight comparables in her appraisal. With regard to R-6, the assessor concluded that the adjusted value was $284,390, and the tribunal concluded that $284,390 was the TCV was the subject property.

Because the tribunal provided no reasoning in support of its wholesale adoption of the City's adjustments to R-6, it is not possible for us to determine whether the decision is supported by competent, material, and substantial evidence. The fact that the City's valuation contained an adjustment to R-6 is insufficient given that (1) the assessor provided little explanation for the adjustments and (2) the tribunal is required to make an independent determination of value. See *Jones & Laughlin Steel Corp v Warren*, 193 Mich App 348, 355; 483 NW2d 416 (1992) ("The tribunal may not automatically accept a respondent's assessment, but must make its own findings of fact and arrive at a legally supportable true cash value."). Accordingly, we remand to the tribunal to provide an explanation and findings of fact to support the adjustment to R-6 and its conclusion that R-6's adjusted sales price is the most reliable indicator of the subject property value.[8]

---

[8] Our conclusion that substantial evidence does not support the tribunal's determination renders moot Huizenga's assertion that the tribunal's valuation was erroneous as a matter of law because it exceeded the range of values that witnesses assigned the property. In any case, we note that

Finally, there is no merit to Huizenga's remaining challenge, i.e., that the tribunal committed an error of law by rejecting his proposed "linear regression analysis." The tribunal is charged with selecting the most accurate valuation methodology using its superior expertise. See *id*. at 353. While Huizenga claims that linear regression analysis is the "most accurate" method of valuation because it can be verified, he has not explained why, under the facts of this case, the sales-comparison approach, which is a well-accepted and reliable method, is deficient. The tax tribunal must select the valuation approach that provides the most accurate valuation under the circumstances, *Antisdale*, 420 Mich at 276-277, and we give deference to the tribunal regarding the appropriate method of valuation and the interpretation of statutes pertaining to valuation, because these are matters within the tribunal's area of expertise, see *Schultz v Denton Twp*, 252 Mich App 528, 529; 652 NW2d 692 (2002). Huizenga has not demonstrated why this Court should stray from this principle.

The order granting reconsideration and corrected final opinion and judgment is vacated and this matter is remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Donald S. Owens
/s/ David H. Sawyer
/s/ Douglas B. Shapiro

---

the tribunal's valuation was within the range of evidence, as the property report card valued the property at $314,085.