# STATE OF MICHIGAN

# COURT OF APPEALS

FARNELL CONTRACTING, INC,

Petitioner-Appellant,

v

DEPARTMENT OF TREASURY,

Respondent-Appellee.

UNPUBLISHED
December 19, 2017

No. 334667
Michigan Tax Tribunal
LC No. 15-003818-TT

Before: MURPHY, P.J., and KELLY and SWARTZLE, JJ.

PER CURIAM.

The central issue in this tax dispute is whether petitioner Farnell Contracting, Inc. is a contractor subject to the Use Tax Act (UTA), MCL 205.91 *et seq*., or whether petitioner is a retailer subject to the General Sales Tax Act (GSTA), MCL 205.51 *et seq*. Respondent Department of Treasury found that petitioner was a contractor subject to the UTA and assessed petitioner $217,050 in unpaid use taxes. Petitioner appealed to the Michigan Tax Tribunal. The tribunal agreed that petitioner was generally a contractor subject to the UTA but found that respondent had improperly categorized certain of petitioner's sales as subject to use tax, when in fact they were retail sales of tangible personal property not subject to use tax. Therefore, the tribunal modified the assessment, reducing it by $25,375 to $191,675. Petitioner appeals as of right, arguing that the remaining sales should have been deemed retail sales of tangible personal property. We affirm.

## I. BACKGROUND

Petitioner, a Michigan corporation, is a supplier and installer of fixed institutional furniture including casework, counter tops, fixtures, and sinks, as well as laboratory fume hoods and test chambers. Petitioner does not manufacture the furniture; instead, petitioner sells pre-manufactured furniture to its customers (usually schools or universities), delivers and unloads it, and may install it on the premises according to the customer's specifications.

In April 2012, respondent commenced an audit of petitioner's use taxes for the period between March 2008 and February 2012. As the audit proceeded, respondent realized that petitioner had not remitted any use taxes on the purchases of materials it used and instead was charging its customers sales tax on those materials. Moreover, because many of its customers are exempt from sales tax, petitioner obtained exemption certificates from those customers and

-1-

did not remit any tax related to these materials. At the conclusion of the audit, respondent issued petitioner a Bill for Taxes Due for $282,312.45 in unpaid use tax, including interest.

Petitioner disputed the tax due and requested an informal conference before respondent. Petitioner took the position that it is a retailer subject to the collection of sales taxes from its customers, whereas respondent asserted that petitioner is a contractor subject to use tax on the materials it installs on its customers' real property. The hearing referee agreed with respondent, finding that petitioner was a contractor subject to use tax for the materials it uses, but reduced the amount of unpaid use tax to $217,050 based on additional job information petitioner submitted.

Petitioner then filed a petition with the Michigan Tax Tribunal alleging that the audit was "incomplete and erroneous." At the hearing before the tribunal, petitioner presented the testimonies of Douglas B. Farnell, petitioner's president, Kathleen M. Farnell, petitioner's treasurer, and Joyce M. King, petitioner's accountant. Douglas characterized petitioner's business as a retailer of personal property, but later admitted that petitioner supplied and installed furniture as a contractor or subcontractor. Kathleen testified that sales tax was generally remitted on all retail sales of furniture, but that no sales tax was remitted if a customer provided an exemption certificate. King testified that she prepared petitioner's tax returns and assisted petitioner in preparation for the audit. Respondent provided only the testimony of its auditor, who described the audit process and the methodology she used to arrive at the tax deficiency owed.

After the hearing, the tribunal entered a Final Opinion and Judgment, finding that petitioner was "in part a contractor in the business of 'constructing, altering, repairing, or improving the real estate of others,' by installing fixtures" and also in part a retailer, selling tangible personal property to institutions exempt from sales tax. Relying on Douglas's testimony and petitioner's evidence, the Tribunal found that the floor cabinets, countertops, wall shelves, desks, mail box cubbies, free standing shelving, wall cabinets, rods, and fume hoods sold by petitioner were fixtures annexed to the realty, and therefore subject to use tax. Comparatively, the tribunal found that petitioner's sale of tables and cabinets on wheels were not sales of fixtures, but rather sales of tangible personal property not subject to use tax. As a result, the tribunal reduced the assessment by $25,375 to $191,675, with interest to be calculated by respondent.

II. ANALYSIS

"Review of a decision by the [Michigan Tax Tribunal] is very limited." *Drew v Cass County*, 299 Mich App 495, 498; 830 NW2d 832 (2013). Unless fraud is alleged, this Court reviews the tribunal's decision for a "misapplication of the law or adoption of a wrong principle." *Liberty Hill Housing Corp v City of Livonia*, 480 Mich 44, 49; 746 NW2d 282 (2008) (internal citation and quotation notation omitted). "The tribunal's factual findings will not be disturbed as long as they are supported by competent, material, and substantial evidence on the whole record." *Drew*, 299 Mich App at 499 (internal citation and quotation marks omitted). "Substantial evidence" is "more than a scintilla of evidence, although it may be substantially less than a preponderance of the evidence." *Leahy v Orion Twp*, 269 Mich App 527, 529-530; 711 NW2d 438 (2006) (internal citation and quotation notation omitted).

*Petitioner is a Contractor Subject to Use Tax.* Petitioner first claims that the tribunal erred by concluding that petitioner is a contractor. According to petitioner, an examination of its activities shows that it does not meet the fixture test, which courts have traditionally used to determine whether an entity is acting as a contractor and, as such, is subject to use tax.

"The provisions of the [UTA] complement those of the [GSTA] and were generally designed to avoid the imposition of both use and sales tax on the same property." *Granger Land Dev Co v Dep't of Treasury*, 286 Mich App 601, 608; 780 NW2d 611 (2009). Under the UTA, every person who acquires tangible personal property is subject to a use tax "for the privilege of using, storing, or consuming tangible personal property in this state." MCL 205.93(1). Comparatively, under the GSTA, a retailer that sells tangible personal property must collect sales taxes from its customers and remit them to respondent. See MCL 205.52(1).

Generally, a contractor is subject to use tax as opposed to sales tax because it uses material to improve real property and does not, unlike a retailer, sell items of tangible personal property. Although neither the UTA nor the GSTA define "contractor," the Mich Admin Code, R 205.71 provides the following guidance:

> (1) "Contractor" includes only prime, general, and subcontractors directly engaged in the business of constructing, altering, repairing, or improving real estate for others.
>
> (2) Contractors are *consumers* of the materials used by them. All sales to or purchases by contractors of tangible personal property are taxable, except when affixed and made a structural part of real estate for a qualified exempt nonprofit hospital or a nonprofit housing entity qualified as exempt under the sales and use tax acts. All materials consumed in the performance of such contracts and not affixed and made a structural part of real property are taxable. [Emphasis added.]

Notably, this definition of "contractor" incorporates by reference the UTA's definition of "consumer," which provides:

> (g) "Consumer" means the person who has purchased tangible personal property or services for storage, use, or other consumption in this state and includes, but is not limited to, 1 or more of the following:
>
> (i) A person acquiring tangible personal property if engaged in the business of constructing, altering, repairing, or improving the real estate of others. [MCL 205.92(g)(i).]

The parties agree that the applicable test for determining whether an entity is a "contractor" under these definitions is the "fixture test." Mainly, Michigan courts, in determining whether an entity is a contractor as opposed to a retailer of tangible personal property, look to whether the entity installs a fixture that is sufficiently affixed to the real property as to be considered a part of the realty, and no longer an item of tangible personal property, after the installation. Factors to consider include:

> (1) whether the property was actually or constructively annexed to the real estate;

(2) whether the property was adapted or applied to the use or purpose of that part of the realty to which the property in question is connected or appropriated; and

(3) whether the property owner intended to make the property a permanent accession to the realty. [*Granger Land Dev Co*, 286 Mich App at 611 (internal citation and quotation notation omitted).]

In the instant appeal, petitioner recognizes that a contractor is subject to use tax, whereas a retailer is subject to sales tax. Petitioner further acknowledges that the test for determining whether an entity is a contractor is the three-part fixture test. In contending that it was not engaged as a contractor, however, petitioner states in a single sentence, "a careful examination of its activities and the items it sold do not meet the . . . fixture test, and the tribunal erred in its conclusion that [petitioner] was a 'contractor' for sales and use tax purposes."

Petitioner makes no effort to explain why an examination of the record would purportedly show that the tribunal's conclusion was erroneous and cites no relevant portions of the record. And, aside from summarizing the relevant law, petitioner does not apply the law to the facts and cites no legal authority to support the conclusion that the tribunal erroneously categorized the instrumentalities that petitioner installed as fixtures. "It is not enough for an appellant in his brief simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position." *Yee v Shiawassee County Bd of Comm'rs*, 251 Mich App 379, 406; 651 NW2d 756 (2002) (internal citation and quotation notation omitted). Accordingly, and given petitioner's complete failure to develop its argument beyond a single conclusory sentence, we conclude that petitioner has abandoned this assertion of error.

Notwithstanding our conclusion, we see no error in the tribunal's determination that petitioner was acting as a contractor during the audit period. Douglas testified that petitioner secures metal cabinets to the floor or wall; attaches countertops to cabinets with silicone caulking or wood screws; installs desks that may be secured to a wall; attaches wall shelves to each other and anchors them to the wall; secures mailbox cubbies to the wall; anchors wall cabinets to the wall with screws and plastic anchors; hangs laboratory rods inside fume hoods or desks; and places fume hoods on cabinets that are eventually connected to mechanical systems, like plumbing or electrical. Given this testimony, we conclude that substantial evidence supports the tribunal's finding that these instrumentalities were actually or constructively attached to the real property such that they became a part of the realty. The tribunal did not err by concluding that petitioner installed fixtures on realty and, therefore, was acting as a contractor and was subject to use tax.

*Petitioner Is Not Entitled to Sales Tax Treatment.* Petitioner next asserts that it is entitled to sales tax treatment, rather than use tax treatment, on two alternative grounds. Specifically, petitioner contends that it is entitled to sales tax treatment because (1) it consistently applied sales tax and (2) it obtained valid sales tax exemption certificates.

Regarding the first argument, petitioner cites no authority in support of its position, but appears to be referring to respondent's Internal Policy Directive [IPD] 2005-3. The IPD states, in relevant part:

> A real property contractor is statutorily considered a consumer of the materials used in the activities of constructing, altering, repairing, or improving real estate for others. Its sales and use tax obligation is generally (except for manufacturer/contractors) 6% of the cost of materials used in the job.
>
> This policy of allowing contractors who consistently hold themselves out as retailers to treat themselves as retailers who are making sales at retail is grounded in the fact that the State of Michigan will receive at least as much sales tax revenue from the contractor as it would receive should the contractor pay sales or use tax on its purchases. **IT IS IMPORTANT TO NOTE THAT WHERE THIS IS NOT THE CASE THE ADMINISTRATIVE POLICY WILL NOT BE FOLLOWED.**
>
> * * *
>
> **There are exceptions to this general policy practice of recognizing sales tax exemptions.** Recall that the policy is fundamentally grounded in the fact that the State of Michigan will receive at least as much tax as would otherwise be due. This fact negates the Revenue Act, 1941 PA 122 as amended, prohibition against compromise of tax. Tax is not compromised because the State of Michigan receives full benefit of the tax. However where this is not true the Department cannot allow sales tax treatment.
>
> The Department will look to an aggregation of transactions to determine if adequate tax has been remitted. If the Department looks at all transactions for a period and finds that the sales tax remitted is less than the sales or use tax that should have been remitted on cost of materials, the Department must assess additional tax. [IPD 2005-3, pp 1-2 (emphasis in original).]

Petitioner's argument mischaracterizes IPD 2005-3 as simply permitting a contractor to elect sales tax treatment in the instance that it consistently applied sales tax and ignores the IPD's exception to this rule that sales tax treatment is not permitted where the net amount of tax to be received by the state is compromised. In other words, while the IPD allows contractors to remit sales tax in some instances, this rule is inapplicable when the state will receive less revenue than it would have had the contractor paid use tax. This is because, as respondent recognizes, the Revenue Act prohibits respondent from reducing the taxes due to the state. MCL 205.28(1)(e).

Next, petitioner contends that it is entitled to sales tax treatment, and relatedly immunity from remitting sales tax, because it obtained facially valid sales tax exemption certificates from its customers. Yet, petitioner's argument is predicated on a fundamentally incorrect premise: that petitioner is liable for sales tax for the sale of items determined to be fixtures. As we have explained, however, contractors are liable for use tax on such transactions and the tribunal did not err by finding that petitioner acted as a contractor. It follows that the exemption certificates

under the GSTA are wholly irrelevant and petitioner fails to cite any authority indicating otherwise. In sum, because petitioner failed to show that the tribunal erred in the first instance by finding that petitioner acted as a contractor in relation to the fixtures it installed, the question of sales tax exemptions as to these transactions is irrelevant.

In its brief on appeal, petitioner also cites parallel provisions of the UTA that allow for exemptions from use tax upon completion of an exemption certificate. See MCL 205.104b. Petitioner, however, does not explain how it is exempt from the UTA or assert that it completed an exemption certificate that would have exempted it from use tax liability for the fixtures it installed on its customers' premises. Again, we will not make out petitioner's argument for it. *Yee,* 251 Mich App at 406.

*The Tribunal Did Not "Rubber Stamp" Respondent's Audit.* Finally, petitioner asserts that the tribunal effectively rubber-stamped respondent's audit and failed to conduct a de novo review. Petitioner insists that the tribunal should have ordered a re-computation of tax liability based on its finding that petitioner's records were accurate instead of affirming respondent's computation, which was the result of incomplete data.

The record does not support petitioner's argument. First, nothing in the opinion suggests that the tribunal blindly adopted respondent's audit results; there are no indications of undue deference to respondent's evidence or other conclusory statements agreeing to respondent's assessment. Second, a review of the tribunal's opinion indicates that it properly performed its review function: after reviewing the record, it adjusted the assessment downward based on petitioner's evidence given its finding that petitioner's records were accurate and complete and that respondent did not keep a list of jobs. Under these circumstances, we cannot agree with petitioner that the tribunal "rubber-stamped" respondent's assessment. Instead, the tribunal conducted an independent de novo review, as statutorily required. See MCL 205.735a(2).

Affirmed.

/s/ William B. Murphy
/s/ Michael J. Kelly
/s/ Brock A. Swartzle